WASHBURN COLLEGE v. COMM'RS OF SHAWNEE CO.

1. TAXATION—EXEMPTIONS: The obligation of the citizen to pay taxes is co-extensive with the protection he receives from the state. An *exemption* from taxation is a release from this obligation, and is an exception to the rule; and those who claim under the exception must show themselves within its terms.

2. ——— *Lands of Educational Institutions.* A tract of land owned by an educational institution, at present unoccupied and unimproved, though intended as a permanent site for the institution, is not exempt from taxation under section one of article 11 of the constitution.

3. ——— *Test of Exemption.* The accumulation of large amounts of untaxed property, by educational, charitable, religious, and other institutions, is contrary to the fundamental rule requiring an equal rate of assessment and taxation; hence the constitution makes "exclusive use," and for a designated "purpose," the test of exemption, not mere "ownership" of the property.

*Error from Shawnee District Court.*

INJUNCTION, brought by *Washburn College* as plaintiff, against *The Board of Commissioners of Shawnee Co.*, as defendants, to enjoin the collection of taxes levied for the year 1870 on a certain quarter-section of land owned by the plaintiff, and held for the use of said college, and for no other use or purpose. The petition claimed that "said real estate is by the constitution of the State of Kansas exempt from taxation." A temporary injunction was granted. The answer admitted that *Washburn College* was an educational institution, duly incorporated, and was the owner of the land described, but alleged that "said land is and always has been wholly unimproved and unoccupied, and said plaintiff does not now use and never has used the same, exclusively or otherwise, for educational, scientific, literary, or other purposes." Plaintiff replied, admitting the truth

of the answer, but averred that the plaintiff " acquired said land for the sole purpose of erecting its permanent (college) buildings thereon as soon as it can do so, and for no other use whatsoever, and that it has always been its intention and still is to use said land for purely educational purposes." The case was tried at the June Term, 1871. The district court gave judgment as follows:

" This cause came on to be heard on the petition and answer and the reply; and the defendants admitting in open court that the statements of new matter in the reply were true, the court doth find on all the issues joined, for the defendants, and doth order and decree that said land in the petition is liable to taxation, as in the answer alleged. It is therefore ordered that the injunction heretofore granted be dissolved, and that the defendants recover of the plaintiff their costs," etc.

The plaintiff excepted, and now brings the case here on error for review.

*Cooper & Fuller*, for plaintiff in error:

1. Every public institution must have a starting point, or nucleus, around which the influences that create the institution must gather, a point of attraction where the energies of its friends will center. This quarter-section of land is such starting point for Washburn College. The legal presumption is that the trustees of the college will use the property of the college in every way they can legally to advance the interests of the institution, and for no other purpose. The only fact alleged to avoid the exemption is that the institution has not improved or occupied the land. Does this fact authorize its taxation in the face of the constitutional exemption?

2. Our constitution is liberal in all its provisions, and especially in its *exemptions;* and it is apparent from the reading that the intention was to foster the cause of education, and provide liberally as far as possible for public institutions of learning; and when a spirit of liberality is apparent in the instrument, we insist that a liberal construction in favor of public institutions should prevail. The cause of education is recognized and provided for as a coördinate branch of the

22—8TH KAS.

government, and it cannot be true that a provision to aid public institutions is to be strictly construed. If the constitutional provision did not exist we insist that, upon common-law principles, the power to destroy by taxation the public educational institutions of the state could not be exercised; and that such property would be exempt because it is *public property* necessary for exercise of the functions of the government upon the subject of education; and the constitution in its provisions expressly recognizes this principle.

We insist that the manifest intention of the constitution is to exempt not only all college buildings, libraries, apparatus, and everything necessary for the greatest usefulness of the institution, but that the exemption includes *all endowments*, whether in money, bonds, or other investments, as well as all lands used as endowment, or the investment from which income is received and applied to pay the legitimate expenses of the institution. The rule is believed to be universal, that endowments are exempt from taxation.

*Solon O. Thacher*, also for plaintiff in error:

1. The language of the constitutional provision seems broad enough to cover the case: "All property used exclusively for * * * educational, scientific * * * purposes * * * shall be exempted from taxation." Of course the words "used exclusively," require construction. I suppose the "use" must be one that "excludes" any other, and the language must be held to mean that all property held by an institution of learning, to promote the cause of education, and for no other purpose, is clearly within the exemption.

The word "use," as defined by Webster, comprehends a variety of ideas. Among others, we find—"conversion to an act or *purpose*," "advantage derived," "usefulness," "utility." Either of these definitions fairly allows of the college holding the tract of land in question for its advantage, its utility, or purpose. It would seem to be a very narrow and harsh construction to say that an infant institution of learning, struggling for existence—unable in its first days to erect, on grounds

reserved *solely* for that use, the building adequate to its needs, should in its weakness bear burdens which are to be taken off as soon as it gains strength. Such a construction of the organic law does violence to the evident liberal spirit in which it was conceived, and would defeat the very purposes sought to be secured by the exemption.

2. It would seem that the court below thought that the words "used exclusively" mean an active, visible service; that the fact that this land was exclusively held by the college for its purposes and uses as soon as it conveniently could do so, did not tell at all in its behalf. But it seems to me the court thereby establishes a very straightened and inconvenient and unreasonable construction. If such be the rule, then the poverty of the institution is made a ground for imposing heavier burdens, while its enhancing wealth gives it not only greater power and usefulness, but absolutely greater immunities.

The true criterion, the one fairly deducible from the language employed, and the character of the institutions to which it applies, it seems to me is this: Does the college hold this property honestly for the uses of education? Is it the purpose of the institution to employ, use, this property exclusively for college uses? And is the property such as an institution might naturally require for its purposes? If these questions may receive affirmative answers, then the mere fact that at present it cannot erect its buildings, enclose its grounds, or use the materials it is slowly accumulating for its varied uses, does not impose upon the college the additional burden of taxation.

*Thomas Ryon*, for defendants in error:

1. Property to be exempt must be *used*, and used *exclusively* for the purposes mentioned. Const., § 1, art. 11. This property is not *used* at all; it is merely held or owned by plaintiff. The plaintiff may never use it.

2. The statute also requires "exclusive use" as a prerequisite for exemption, and contemplates that such use must include occupation by its college or school buildings. It also limits the quantity of land. Gen. Stat., ch. 107, § 3, clause 3d.

The opinion of the court was delivered by

BREWER, J.; Only one question is presented in this case, and that involves a construction of these words in section one of Article 11 of the State Constitution: "All property *used exclusively* for state, county, municipal, *literary, educational,* scientific, religious, benevolent and charitable purposes &ast; &ast; &ast; shall be exempt from taxation." The plaintiff, as is admitted by the pleadings, is a literary and educational institution, incor- porated under the laws of Kansas, and is the owner and in possession of a quarter-section of land adjacent to the city of Topeka, in the county of Shawnee. It is further admitted that such quarter-section is and always has been unimproved and unoccupied; that at present plaintiff occupies and uses ground and buildings in the city of Topeka for carrying on its work; that these are inadequate and insufficient for its uses, and that it has held such quarter-section ever since title was acquired for the sole purpose of erecting its permanent buildings thereon, and that it has always been its intention and still is to use said land for purely educational purposes. Upon these facts plain- tiff claims that this quarter-section is by virtue of the consti- tutional provision quoted exempt from taxation. With us this question is one purely of construction, and not of policy. Whether the rules in respect to exemptions fixed by the people in their organic instrument, or established by their represen- tatives in legislature assembled, be wise or unwise, is not for us to inquire. *Ita lex scripta est*, concludes us.

All property receives protection from the State. Every man is secured in the enjoyments of his own, no matter to what use he devotes it. This security and protection carry with them the corresponding obligation to support. It is an obligation which rests equally upon all. It may require military service in time of war, or civil service in time of peace. It always requires pecuniary support. This is taxation. The obligation to pay taxes is co-extensive with the protection received. An exemption from taxation is a release from this obligation. It is the receiving of protection without contributing to the sup-

port of the authority which protects.   It is an exception to a rule, and is justified and upheld upon the theory of peculiar benefits received by the State from the property exempted. Nevertheless, it is an exception; and they who claim under an exception must show themselves within its terms.   Appyling these general considerations to the question before us, let us see whither they will lead us.   To bring this property within the terms of the section quoted it must be "used exclusively for literary and educational purposes."   This involves three things, first, that the property is used; second, that it is used for educational purposes; and third, that it is used for no other purpose.   Now what facts are alleged from which it is claimed this use can be inferred?   Simply two—first, ownership, and second, an intention to occupy as a permanent site.   But neither of these tends to show an *actual* use.   An intention to occupy is not equivalent to occupation, does not tend to prove it.   The pleadings recognize the difference, for they admit the failure while they allege the intention to occupy.   An occupation which is to be—though here it is only which may be—is no present use.   Nor is ownership evidence of use.   Full possession and perfect title are consistent with total failure to use. This is too plain to need either argument or illustration.   If the framers of the constitution had intended to exempt all property belonging to literary and charitable institutions from taxation, the language employed would have been very different. They would have used the simple, ordinary language for expressing such intention.   The fact that they ignored "ownership," and made "use" the test of exemption, shows clearly that they recognized the essential distinction between the two, and established the latter rather than the former as the basis of exemption.   The argument pressed with great force by counsel for plaintiff that this construction operates harshly upon infant institutions of charity and learning, which must first secure a site before obtaining means to erect buildings upon it, and that thus the "poverty of the institution is made a ground of imposing heavier burdens, while its enhancing wealth gives it not only greater power and usefulness, but absolutely greater

immunities," is an argument to be addressed to the people who have the power to increase exemptions if deemed wise in favor of such institutions. But the same construction of this constitutional provision which would exempt the property of the infant and feeble would also exempt the property of the older and wealthy and strong institutions. It would be virtually granting immunity from taxation to all institutions within this state, organized for the accomplishment of the purposes named in that section, no matter what amount of property they might amass; for all their property they would hold with a view, at some time and in some form, to use in accomplishing the purposes of their organization. This may seem fraught with little peril in a young state; but the history of older communities shows the danger of the accumulation of large amounts of untaxed property by even religious organizations. But it is said that " the intention was to exempt from taxation all property, real or personal, productive or non-productive, in use, or to be hereafter used, that is fairly held *for the aid* of such educational institutions." In other words, because the possession of certain property aids an educational institution, therefore it is used for educational purposes. This is but a stronger way of stating the proposition that ownership is the test of exemption; for the possession of property always inures to the benefit of an institution, always aids it. It gives it credit, inspires confidence, and attracts other property. It gives to it, as to an individual, larger possibilities. Yet this is but an incident to a result of the ownership. And this, as we have seen, was ignored as a rule of exemption; and that which was established was the present and exclusive use for certain designated purposes. The judgment of the district court is affirmed.

All the Justices concurring.