# Anniston City Land Company
# v. The State.

*Assessment of Back Taxes.*

(Decided Feb. 18, 1909. 48 South. 659.)

1. *Constitutional Law; Self Executing Provisions.*—Section 91, Con-
stitution 1901, is self executing.

2. *Taxation; Exemption; School Property.*—A tract of land with
buildings thereon, located in the city of Anniston and used as a
boarding school for young ladies is exempt from taxation under sec-
tion 91, Constitution 1901.

3. *Same; Personal Property.*—As to personal property used for
school purposes, and its exemption from taxation, section 2061, Code
1907, is valid and controls, since the Constitution makes no provis-
ion for such exemption.

4. *Same; Real Property.*—Under section 91, Constitution 1901, the
exemption depends entirely on the use to which property is de-
voted, and section 2161, in so far as it relates to real property and

[Anniston City Land Co. v. The State.]

attempts to add the ownership of the property to the conditions of exemptions, is in contravention of the Constitution, and invalid.

APPEAL from Calhoun Circuit Court.

Heard before Hon. JOHN PELHAM.

Proceedings by the state to assess back taxes against certain lands and the improvements thereon alleged to belong to the Anniston City Land Company, and alleged by the Land Company to have been used exclusively for school purposes. From a judgment subjecting the land to the back taxation the Land Company appeals. Reversed and remanded.

BLACKWELL & AGEE, for appellant.—Block 145 was not liable for taxation for back taxes, nor should lot 14 in block 22, as it was used exclusively for school purposes.—Sec. 3907, Code 1896; Sec. 91 Constitution 1901; *Washington College v. Shawnee County*, 8 Kan. 345; *Veil v. Beech*, 10 Kan. 214; *White v. Smith*, 43 L. R. A. 489; 12 A. & E. Ency of Law, 322.

ALEXANDER M. GARBER, Attorney-General, THOMAS W. MARTIN, Assistant Attorney-General, and W. P. ACKER, for the state.—The property sought to be exempted was taxable.—Colley on Taxation, pp. 350-3; *Foxcroft v. Straw*, 86 Maine 76; *Brodie v. Fitzgerald*, 57 Ark. 445; *Commissioners v. Colorado Seminary*, 12 Colo. 497; *St. Mary's College v. Crowl*, 10 Kan. 442; *Armand v. Dumas*, 28 La. Ann. 403; *Hennepin County v. Bell*, 43 Minn. 344; 32 Hun. 457; *Laurent v. City of M.*, 59 Ia. 405; *State v. Ross*, 24 N. J. 497; *Wyman v. St. Louis*, 17 Mo. 335.

DENSON, J.—On October 4, 1906, the commissioners' court of Calhoun county fixed the value of certain property of the Anniston City Land Company for tax-

ation as follows: Block 145, known as the "Anniston Inn Block," with buildings thereon, at $25,000, for each of the years 1903 to 1906, inclusive. Furniture at $1,000, for each of the years 1903 to 1906, inclusive. Lot 14, in Block 22, with the building thereon, known as the "Sixteenth Street School," at $750, for each of the years 1902 to 1906, inclusive. From this assessment and valuation the land company appealed to the circuit court (Code 1896, § 3979; Code 1907, § 2148), and from the judgment in that court rendered against it this appeal has been taken.

It was agreed in the circuit court that the values of the property were, for the periods embraced in the assessment, as stated above. It was also agreed that the assessment of said property as an escape and for the year 1906 was in due form, and that the only questions involved on the appeal in the circuit court were: First, whether said property, or any part thereof, was exempt from taxation; second, if the property was not exempt, had the taxes been paid for all, or certain of said years? The evidence in the circuit court showed that block 145, for each of said years 1903 to 1906, inclusive, had been assessed as follows: "Block 145, that part not exempt, $1,000." It was also shown that lot 14, in block 22, had been listed for the years 1901 to 1906, inclusive, as follows: "Block 22, lot 14, exempt."

The appellant was the owner of all of said property during said years, and is yet the owner thereof. The testimony showed that for each of the years 1901 to 1906, inclusive, block 145 and the building thereon, known as the "Anniston Inn," in the city of Anniston, had been leased by the appellant to Dr. Owens and others for school purposes; that therein was conducted a boarding school for young ladies, which use had obtained during each of said years, and that in conjunc-

tion with the boarding school there was a day school; that such school was known as "Anniston College for Young Ladies," and was open from early fall until late in the spring, as was usual and customary with schools in that section of the country. It was also shown that said property was not used for any other than school purposes; that the inn itself covered one acre of land, and that the whole block upon which it was located contained four acres; that the building on lot 14, block 22, was built about 15 years ago, was adapted to school purposes, had never been used for any other purpose, occupied land in area less than one acre, and, during the years 1901 to 1906, inclusive, had been leased by the appellant to the city of Anniston for a public school building. The testimony also showed that said leases were for a substantial money consideration and that the appellant had no interest in the schools.

Was the property subject to taxation, or, to put it differently, was the property, or any part thereof, on account of the use to which it was put by the lessees, exempt from taxation? The "universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision. The relinquishment or curtailment of the power of taxation is never presumed."—Gray, Lim. of Taxing Power, p. 655, § 1321, and cases cited in note 53 to the text, among them being that of *Stein v. Mobile,* 17 Ala. 234, 239. In the case last cited this court, through Dargan, C. J., gave expression to the rule in this language: "The right of taxation is essential to the existence of all governments. * * * and it is never to be presumed

that this right is abandoned or surrendered unless it clearly appears that such was the intention."—1 Cooley on Taxation (3d Ed.) p. 356, and cases cited in note 2 to the text. "Most exemptions from taxation belong to classes which it has been the policy of the various states to exempt from the beginning. These customary exemptions all have some well-understood basis. It has been the policy of the country to encourage education in all its aspects, and property used for educational purposes is generally, within certain limitations, exempt."—Gray, Lim. of Taxing Power, §§ 1324, 1325.

Exemption is here claimed by the owner of the property under section 91 of the Constitution of 1901, which is a rescript of section 52 of the Constitution of 1875 with the last clause thereof eliminated. Section 91 is self-executing, and proprio vigore exempts from taxation lots in incorporated cities or towns, or within one mile of any city or town, to the extent of one acre, with the buildings thereon, "when the same are used exclusively for religious worship, for schools, or for purposes purely charitable." The precise question here to be determined has never been adjudicated by this court; but fortunately the path before us is not an entirely untraveled one in other jurisdictions. The Constitution of the state of Kansas contains a provision in this language: "All property used exclusively for state, * * * literary, educational, scientific, religious, benevolent, and charitable purposes * * * shall be exempt from taxation." The court of last resort in that state, construing the provision and speaking through Brewer, J., said: "To bring this property within the terms of the section quoted, it must be used exclusively for literary and educational purposes. This involves three things: First, that the property is used; second, that it is used for educational purposes; and, third, that it is used for no

other purpose. * * * Nor is ownership evidence of use. * * * This is too plain to need either argument or illustration. If the framers of the Constitution had intended to exempt all property belonging to literary and charitable institutions from taxation, the language employed would have been very different."—*Washburn College v. Shawnee County,* 8 Kan. 344. Again, in the case of *St. Mary's College v. Crowl,* 10 Kan. 442, the same provision of the Kansas Constitution was before the Supreme Court of that state for construction, and the court used this significant language: "It is solely the use of the property which determines whether the property is exempt or not.—*Washburn College v. Shawnee County,* 8 Kan. 344. It makes no difference who owns the property, nor who uses it. Property used exclusively for educational purposes is exempt, whoever may own it, or whoever may use it."

It is true that the facts of these two cases, respectively, show that the title to the property was in the party claiming the exemption; but this, we think, does not necessarily weaken the cases as authority in the case at bar, for the reason that the court, in both, brought pointedly into view the principle that "exclusive use," irrespective of ownership, was the test of the right of exemption. We do not stand alone in this construction of these decisions. In the case of *Scott v. Society of Russian Israelites,* 59 Neb. 571, 81 N. W. 624, the Supreme Court of Nebraska took the same view of them. There the property claimed as exempt was owned by one Bowman, who had leased it to the society for a money consideration, and upon the further consideration that the society would pay the taxes during the lease term. The property was used exclusively for religious purposes. The statute under which the exemption was claimed was in this language: "The following property

shall be exempt from taxation in this state: First, the property of the state, counties, and municipal corporations, both real and personal; second, such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery, and charitable purposes." Construing the statute, the court said: "The language of the provisions quoted is plain. There is exempt from taxation all property used exclusively for religious purposes. It is the exclusive use for the purpose named which determines whether the property is subject to the burden of taxation or not." The cases from the Kansas court, above referred to, are cited, among others, in support of the holding. The court further said: "To hold that a religious society must be the absolute owner of the property occupied or used by it exclusively for church purposes, to create the exemption, would be to inject words into * * * the statute which are not therein written. This we have no power to do." A provision of the Ohio Constitution, similar to section 91 of our own, was construed by the Supreme Court of that state in this language: "The exemption of burying grounds, houses used exclusively for public worship, and institutions of purely public charity does not depend on the ownership of the property. The uses that such property subserves constitute the ground for its exemption."—*Gerke v. Purcell,* 25 Ohio St. 229.

The foregoing cases are the only ones we have found which had under consideration laws similar in verbiage to our own. Upon the foregoing considerations it is manifest that section 91 of the Constitution makes use of the property, irrespective of ownership, the test of the right of exemption from taxation, and that, under the Constitution, in order to be exempt, it is only necessary that the property shall be situate in a city or a town, shall not exceed in area the limitation fixed by the Con--

[Anniston City Land Co. v. The State.]

stitution, and that it shall be used directly and exclusively for schools. The cases cited in appellee's brief, when examined, will be found to involve the construction of laws dissimilar to ours, in that exclusive use is not by them constituted the only criterion of exemption. Therefore they are not in point.

Section 3907 of the Code of 1896, as amended by the act of March 5, 1901 (Acts 1900-01, p. 2598), being section 2061 of the present Code, adds to the conditions of exemption ownership of the property. In other words, according to the amendment, the property, to be exempt, must be owned and used by the person to whom it is assessed exclusively for schools. The Constitution being self-executing and mandatory, it is obvious that it was beyond legislative competency to add ownership as a prerequisite to exemption from taxation, and that in this respect the statute is ineffective, in so far as it bears upon real property, to accomplish the purpose of its enactment. There is high authority holding that the use of a school building in the vacation period, in the summer, as a boarding house, is not a waiver or forfeiture of exemption from taxation.—*Temple Grave Seminary v. Cramer*, 98 N. Y. 121; *St. Mary's Church v. Tripp*, 14 R. I. 307. But we need not commit ourselves to this holding, as we do not regard the evidence in this record as showing that there was any diversion of the use of the Anniston Inn from school purposes during the vacation period.

The Constitution makes no provision for the exemption of personal property used for school purposes from taxation, and therefore, the added condition of ownership, under the statute, is valid as to personal property; but, to authorize the exemption of personal property, ownership, and exclusive use must concur. In this view, the exemption of personal property claimed was properly adjudged against the appellant.

Upon the facts as disclosed by the record, and in the light of the foregoing discussion, we reach the conclusion that the exemptions should have been allowed as to the realty.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.