21 So.2d 316

### STATE v. BRIDGES et al.

6 Div. 306.

Supreme Court of Alabama.

March 8, 1945.

---

[1] 31 Ala.App. 287.

Wm. N. McQueen, Acting Atty. Gen., and John W. Rish and H. Grady Tiller, Asst. Attys. Gen., for appellant.

Spain, Davies, Gillon, Grooms & Young, of Birmingham, for appellees.

GARDNER, Chief Justice.

Appellees jointly own a three-story brick building situated on Lot 18 and the west half of Lot 20 in Block 74 in the City of Birmingham, Alabama, the lot being 50 feet in width and 140 feet in depth. The ground floor of the building is rented to two separate tenants for commercial purposes, each paying $275 per month. The second and third floors of said building, together with the connecting stairway, are leased to the Massey Business College, a partnership, for a rental of $187.50 per month, making a total rental for the building of $737.50. The gross rent, therefore, produced by the lease from the Massey Business College is slightly in excess of 25% of the total. This property was assessed by the Board of Equalization for Jefferson County as a whole at a valuation of $54,000.

Pursuant to the provisions of Sec. 110, Title 51, Code 1940, the appellees appealed from the order entered by the Board of Equalization to the Circuit Court of Jefferson County. There the cause was heard upon an agreed statement of facts, the salient features of which, so far as the result here is concerned, have been stated. And upon consideration of the cause in the circuit court a judgment was entered to the effect that the second and third floors of this building, and the stairway leading thereto, be held exempt from ad valorem taxes by reason of the fact these parts of the building were being used exclusively for schools, within the meaning of Sec. 2, Title 51, Code 1940; and that, excluding these parts of the building, the assessed valuation of the remainder be fixed at $40,500. The matter of valuation was as stipulated in the agreed statement of facts. This conclusion resulted in an order of refund to the property owners from the State, the County of Jefferson, and the City of Birmingham. From the judgment thus rendered the State has prosecuted this appeal.

The sole question here for consideration is, whether the second and third floors of this building are exempt from taxation, either under Sec. 91 of the Constitution of 1901 or under the provisions of subd. (a), Sec. 2, Title 51, Code 1940.

The constitutional exemption, Sec. 91, supra, is of "lots in incorporated cities or towns, or within one mile of any city or town to the extent of one acre, [and] lots one mile or more distant from such cities or towns to the extent of five acres, with the buildings thereon, when same are used exclusively for religious worship, for schools, or for purposes purely charitable." It will be noted that this constitutional provision is applicable only to real estate, and places no limitation on the Legislature concerning the taxation of personal property.

In Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659, it was held that it was the use of the property and not its ownership that laid the foundation for the exemption. And in State v. Church of the Advent, 208 Ala. 632, 95 So. 3, following the holding of the above-cited authority, the conclusion was reached that the test by which it is to be determined whether or not the property is exempt is the use to which it is put and not the purpose for which the proceeds are devoted, if the property is actually rented to others.

In State v. Alabama Educational Foundation, 231 Ala. 11, 163 So. 527, this constitutional provision was interpreted as not prohibiting the Legislature from granting other exemptions to religious, educational, and charitable institutions.

The minute entry in the instant case has the recital that the matter of exemption was rested upon Sec. 2, Title 51, Code 1940. But so far as the purposes of this appeal are concerned, we are unable to discover any material difference in the statutory exemption and that found in the above-cited Sec. 91 of our Constitution. True, the statute extends the exemption to personal property, as to which the constitutional provision is silent. But we are not here concerned with personal property, and that distinction is therefore immaterial. The statute exempts "all property, real and personal, used exclusively for religious worship, for schools or for purposes purely charitable."

There is a proviso in regard to the property, real or personal, owned by any such institutions which is let for rent or hire. But that proviso is inapplicable here, and may, therefore, be disregarded. True, the statute makes no reference to any matter of limitation as to the acreage, but that, too, is a difference without any significance here. It would, therefore, appear that a consideration of the merits of this case from the standpoint of Sec. 91 of the Constitution or of Sec. 2, Title 51, Code 1940, would lead to the same result. And that result must be determined upon whether or not the property, within the meaning of these constitutional and statutory provisions, is used exclusively for school purposes.

At the outset, it may be observed that, in keeping with the principle expressed by some of the authorities that "equality is equity," a constitutional or statutory grant of exemption from taxation is to be strictly construed. 61 C.J. p. 392. And this rule of construction was given application to Sec. 91 of our Constitution in Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659, 660, where it was observed: "The 'universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision.'"

The right to tax is never presumed abandoned or surrendered unless it clearly appears that such was the intention. In this same authority the Court quoted approvingly from Washburn College v. Shawnee County, 8 Kan. 344, involving a constitutional provision which bears striking analogy to our own, i. e., for the exemption to be claimed, the property must be used exclusively for educational purposes. In speaking of this decision our Court, in the Anniston City Land Co. case, supra, said: "The court of last resort in that state, construing the provision and speaking through Brewer, J., said: 'To bring this property within the terms of the section quoted, it must be used exclusively for literary and educational purposes. This involves three things: First, that the property is used; second, that it is used for educational purposes; and, third, that it is used for no other purpose.'"

The State insists, in the first instance, that a business college is not included in

the term "school" as used in the Constitution and statutes of this State exempting property used exclusively for schools from taxation. Among the authorities cited in support of this insistence are: Lawrence Business College v. Bussing, 117 Kan. 436, 231 P. 1039, from the Supreme Court of Kansas; Parsons Business College v. Kalamazoo, 166 Mich. 305, 131 N.W. 553, 33 L.R.A.,N.S., 921; Lichentag v. Tax. Collector, 46 La.Ann. 572, 15 So. 176. In answer thereto, counsel for appellees cite, as holding to a contrary view: Board of Commissioners v. Tulsa Business College, 150 Okl. 197, 1 P.2d 351; Watson v. Cowles, 61 Neb. 216, 85 N.W. 35; Rohrbough v. Douglas County, 76 Neb. 679, 107 N.W. 1000; Wilson's Modern Business College v. King County, 4 Wash.2d 636, 104 P.2d 580; In re Mountain State College, Inc., Assessment, 117 W.Va. 819, 188 S.E. 480; Pitcher v. Miss Wolcott School Ass'n, 63 Colo. 294, 165 P. 608, L.R.A.1917E, 1095; Detroit Home & Day School v. City of Detroit, 76 Mich. 521, 43 N.W. 593, 6 L.R.A. 97, among others. · Additional authorities treating this question may be found noted in 51 Am.Jur. pp. 595, 596; 95 A.L.R. p. 75.

A cursory examination of the cases is persuasive that the question is a debatable one and worthy of serious consideration. But in view of the fact that we are clearly convinced that the property here in question does not come within the influence of the language of either the Constitution or the statute as to exclusive use for schools, whatever conclusion may be reached concerning the status of a business college, we have left that question to one side and undetermined. We have commented upon this insistence in order to make clear our position that the determination of this question is left to one side.

Some of the authorities cited by appellees appear to sustain the view that different floors of one building may be used for different purposes and thus be separate parcels for taxation purposes, and that the exemption thus turn upon the exclusive use of the property claimed to be exempt. Among the authorities cited are: Parker v. Quinn, 23 Utah 332, 64 P. 961; State v. Board of Assessors, 52 La.Ann. 223, 26 So. 872; Y. M. C. A. v. Douglas County, 60 Neb. 642, 83 N.W. 924, 52 L.R.A. 123; First Methodist Episcopal Church v. City of Chicago, 26 Ill. 482; Massenburg v.

Grand Lodge F. & A. M., 81 Ga. 212, 7 S.E. 636; Appeal Tax Court of Baltimore City v. Grand Lodge, etc., 50 Md. 421; Cleveland Library Ass'n v. Pelton, 36 Ohio St. 253; Board of Home Missions, etc., v. City of Philadelphia, 266 Pa. 405, 109 A. 664; City of Philadelphia v. Barber, 160 Pa. 123, 28 A. 644. Some of these authorities are found cited to the notes in 61 C.J. p. 485.

But we have made no critical examination of the constitutional or statutory provisions of these several states, or a close analysis of the decisions rendered. To justify a holding that a business structure with single ownership was subject to division as to valuation for taxation assessment purposes it appears to us quite clear there must be a statute which is subject to such construction. We have examined our statute in regard to assessment of taxes, as found in Chapters 7 and 8, Title 51, Code 1940, and other statutory provisions, and we find no such authority for fixing a valuation for tax assessment purposes of various floors put to different uses. Nor have counsel cited us to any such statutory authority. It is clear enough no such authority can be found in Secs. 17, 21, 39, and 41, Title 51, Code 1940, but rather the contrary is indicated.

Counsel for appellees note authorities dealing with separate ownership of parts of a structure (1 C.J. p. 1232; 2 C.J.S., Adjoining Landowners, § 27, p. 28 and Subd. 8, Sec. 47, Title 51, Code 1940). But we are not here dealing with such separate ownerships. Here we are concerned only with the building and the lot on which it is located, all under a single ownership. Under such circumstances, we are fully persuaded the language of our tax assessment statute cannot reasonably be construed as justifying any such division of the property for such taxation purposes. We have not overlooked the cases cited in other jurisdictions which appear to hold to the contrary. But so conceding, we cannot follow in their wake. To our way of thinking, such an interpretation would be a most liberal one, wholly unjustified unless language so indicated, and directly contrary to the rule of strict construction applicable to exemptions from taxation.

This question was presented to the Supreme Court of Missouri as far back as 1852 in Wyman v. City of St. Louis, 17

Mo. 335. There the Court observed: "It is admitted that the house is subject to taxation; can the officer assess it but according to its value? There is no mode pointed out by which part of a house can be assessed and not the remainder. Such a proceeding is no where contemplated by the statute. It must produce difficulty and embarrassment."

We think this language is directly applicable here. That case is likewise an authority that the building, though in part used for school purposes, can claim no exemption from taxation where other parts were rented for commercial purposes. The opinion lays stress upon the fact that there was but one owner for the entire building. It was not a case in which different owners are possessed of different floors of the same house. We have laid stress also upon that fact here. There is here one ownership of the entire building. In the discussion of the question the author uses the following argument: "If the use of a part of a building, as a school house, will exempt it from taxation, then, it being a school house, it should not be sold for the nonpayment of taxes. Indeed it cannot be. But if the part occupied for other purposes, should be in arrears for taxes, would not the school house exempt it too from sale? If this is no, then the construction of the act contended for would enable property holders to place it beyond the power of the law to enforce the collection of the taxes due upon it."

Let us take, for example, the building here involved. If the second and third floors with the stairway are to be exempt, then, as observed by the Missouri Court, that cannot be sold for taxes. But if the taxes due on the property should be in arrears, would any one for a moment consider that the Legislature had contemplated there should be a separate sale of the ground floor? Clearly not.

The same question was again considered by the Missouri Court in Fitterer v. Crawford, 157 Mo. 51, 57 S.W. 532, 535, 50 L.R.A. 191. That decision involved exemption of a Masonic lodge building with three stories, the third story of which was used for lodge purposes, but the ground floor and the other story were used for commercial purposes. The Court said: "Now, as to the third story there can be no question as to its use for such purposes, but, as to the other stories and the ground, they are not so used, and, being parts of the same building, and belonging to the same party, it could not be parceled out, and thus assessed and taxed, so as to bring that part of it 'used exclusively for charitable purposes' within that provision of the statute which exempts such property from taxation."

The same court, in State ex rel. Spillers v. Johnston, 214 Mo. 656, 113 S.W. 1083, 1086, 21 L.R.A.,N.S., 171, cited a number of authorities to the following statement, as found in the opinion: "In interpreting the phrase, 'used exclusively,' commonly found in constitutional and statutory tax-exempting provisions, it has uniformly been held that if certain parts of the school building be rented for stores or other income purposes, not merely incidental to the school itself, it destroys the exemption."

A synonym for the word "exclusive" is the word "sole." Webster's New International Dictionary. The constitution and statutes of the State of Florida require that the property, for exemption purposes, must be used solely for educational purposes. Speaking to this question, the Supreme Court of Florida in Rast v. Hulvey, 77 Fla. 74, 80 So. 750, 753, said: "It is therefore fairly established that this property is not being used solely for educational purposes, but is used also as the home of the appellee and his family during the entire year. We do not think the property is exempt from taxation. Were such the case, following it to be its logical conclusion, every taxpayer might exempt from taxation the home in which he lives with his family by having some member of his family teach school in the home each year."

In 61 C.J. p. 472 is the following: "Where statute or constitution so requires, the educational or other required use of property entitling it to exemption must be exclusive, and a principal use for the required purposes will not satisfy exemption requirements, unless the use for nonexempt purposes is inconsequential in extent."

But whatever may be said of the decisions of other jurisdictions, in our opinion the matter is foreclosed by the decision of this Court in Anniston City Land Co. v. State, 185 Ala. 482, 64 So. 110. (For first appeal see Anniston City Land Co. v. State, supra, 160 Ala. 253, 48 So. 659. We find no satisfactory explanation of this decision

in brief of counsel for appellees. Counsel state, as we read the brief, but without argument sufficiently convincing, that what was said in this case on second appeal was dictum. We cannot agree. One of the prime questions for decision was whether or not the claim of exemption for the building for the year 1906 was properly disallowed, and the opinion, by Justice Sayre, directly answers that question. The author makes note of the authorities relied upon by counsel for appellant in that case, to the effect that incidental use does not interrupt the exclusive occupation of the building for school purposes, but observes that it leaves the court to determine what other uses are so incidental as not to interrupt an exclusive use for school purposes, which determination must depend upon the facts of the individual case. After distinguishing these cases from the one under review, the opinion continues [185 Ala. 482, 64 So. 111]: "Here, without doubting that the building, or rather, perhaps, the larger part of it, was used in good faith for educational purposes during the period in question, we are of opinion that the different uses to which we have referred, though they must have been induced by the personal convenience or interest of the lessee, cannot in any just and proper sense be said to have proximately contributed to the uses of education. They were incidental of course, and it may be that the space so occupied was not needed for the school; but the property unit was indivisible, and they interfered effectually with that exclusive use for school purposes which the Constitution exacts as a condition of exemption from sharing the burdens of the state. The claim of exemption for the building was properly disallowed for the year 1906."

In our opinion the above-cited authority is controlling here. It determines, not only the question of exclusive use, but also the question of division of the building for taxation purposes. The original record, which has been examined, discloses that this building was originally constructed as a hotel, was of substantial character, and four stories in height. It is to be observed, also, that the opinion indicates: "The space so occupied [for commercial purposes, we interpolate] was not needed for the school." We think it clear enough from an examination of the record in that case, therefore, that the matter of division of the property was as plainly presented as in the instant case. The learned Justice who wrote the opinion and the concurring members of the Court were familiar with the matter of taxation assessment of property. They were dealing with the question of exemption, and the matter of the exemption of a part of the property was as much involved as the whole. So viewed, therefore, it must be concluded that the language of the opinion was carefully chosen, wherein it expressly stated that "the property unit was indivisible." That decision was rendered more than thirty years ago, and has been undisturbed by subsequent decisions of this Court, as well as by any legislative enactment.

A question bearing very strong analogy to the instant case was presented to the Attorney General in the year 1941. It involved the matter of taxation of the Education building belonging to the First Baptist Church of Birmingham, several floors of which were used for church purposes and others purely for commercial purposes; i. e., rented for commercial use. Attorney General Lawson (now Justice Lawson) issued a very carefully prepared opinion which acknowledges that he had the benefit of very able brief prepared by eminent counsel representing the church. Vol. 24, Quarterly Reports Attorney General, July-September 1941, p. 246. Counsel representing the church, just as counsel here, laid stress upon decisions in other jurisdictions, but the Attorney General concluded that the whole matter was determined adversely to the church in Anniston City Land Co. v. State, 185 Ala. 482, 64 So. 110, which he considered conclusive. In this opinion the Attorney General was eminently correct, and we are in agreement therewith that this authority is decisive of the whole matter. It may not be out of place here to add also that, so far as the records of this Court disclose, the opinion of the Attorney General was accepted as correct, for no litigation concerning the matter there involved reached the dockets here.

After a careful study of the question, we find ourselves fully persuaded that Anniston City Land Co. v. State, supra, is not only well supported by respectable authorities, but by sound reasoning and common sense as well.

This cause was tried in the court below upon an agreed statement of facts, and

presents only a single question here for decision. The first assignment of error, that the court erred in the rendition of the judgment of August 14, 1944, against appellant in favor of appellees would have sufficed for all purposes, and the other assignments may be considered as mere surplusage. The criticism of counsel for appellees concerning the form of the brief of the counsel for the State presents no obstacle to the consideration of the cause upon its merits.

We conclude that the judgment of the trial court is laid in error and is due to be reversed. A judgment will be here entered reversing the judgment rendered and confirming the assessment of the property here involved at $54,000 as fixed by the Board of Equalization of Jefferson County, a valuation uncontested, as we find from the agreed statement of facts.

Reversed and rendered.

THOMAS, FOSTER, and STAKELY, JJ., concur.