No. 47,878

(547 P. 2d 706)

THE DEFENDERS OF THE CHRISTIAN FAITH, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Appellee*.

Opinion filed March 6, 1976.

*Jerry G. Elliott*, of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Robert C. Foulston*, of the same firm, was on the brief for the appellant.

*George D. McCarthy*, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is a tax grievance proceeding in which the appellant landowner sought to have all or part of a building declared exempt from taxation by the board of tax appeals. The board denied any relief, the district court did likewise, and the landowner has appealed to this court.

The determinative issue is whether the owner of a multistoried building, part of which is concededly used for commercial purposes, is entitled to a partial exemption from ad valorem taxes for that part of the building which is arguably used exclusively for religious or charitable purposes. We hold it is not.

The appellant, The Defenders of the Christian Faith, Inc., is a nonprofit corporation organized for religious purposes, although not affiliated with any church. In September, 1971, it purchased the ten-story building at First and Market Streets in Wichita which had formerly housed the Radisson Wichita Hotel. After some renovation Defenders had, by January 1, 1972, devoted the building to the following purposes:

*Top eight floors:* A residence for ambulatory "senior citizens," who paid $85.00 to $400.00 per month rent.

*Mezzanine:* Administrative offices of Defenders; a chapel, a "fellowship room" and auditorium for residents of the building.

*First floor:* Lobby and shops. Four shops were leased in 1972 as a restaurant, a pharmacy, a beauty parlor, and a gift shop, grossing $10,600.00 in rentals per year. Two more shops were to be rented when remodeling was complete. '

*Basement:* Mechanical equipment of the building; printing and mailing facilities for a magazine and other publications of Defenders.

The application for relief filed with the board of tax appeals asked for exemption of the entire building for the year 1972 and subsequent years. Subsequently Defenders filed a new application for 1974 and 1975, so we are here concerned only with 1972 and 1973.

The hearing before the board of tax appeals was largely devoted to Defenders' efforts to show that its eight-floor "home for senior citizens" was a "charitable" enterprise under the tests established in *Lutheran Home, Inc., v. Board of County Commissioners,* 211 Kan. 270, 505 P. 2d 1118. Additional evidence was designed to bring the administrative offices on the mezzanine under the "religious" purpose doctrine of *Trustees of The United Methodist Church v. Cogswell,* 205 Kan. 847, 473 P. 2d 1. Finally, the publishing venture conducted in the basement was claimed to be a "religious" use of that area. Whether this last claim was made because the magazine was religious in content or because the $450,000.00 annual subscription revenue derived from it was devoted to the religious purposes of the parent organization is not clear; there was little evidence offered to support either ground. (Compare, *Defenders of the Christian Faith, Inc. v. Horn,* 174 Kan. 40, 254 P. 2d 830.)

In its order the board, after describing the uses being made of the building, concluded:

"7. The Board, as such, cannot find that there is an exclusive use being made of the property in question for any exempt purpose. The only part of the property which the Board finds might qualify for an exemption consists of the two floors being utilized by the applicant in their religious work. The Board even has doubts about this, however, but in view of their holdings in this matter, a discussion of this issue is unnecessary."

The board thus declined to make specific findings as to whether any *portion* of the building was devoted exclusively to an exempt

use. The fact that a portion of the building was devoted to a clearly nonexempt use precluded a finding that the "property" was being "actually and regularly used exclusively for . . . religious . . . or charitable purposes." (K. S. A. 79-201, *Third.*) The district court, in denying relief, likewise concluded that "the building formerly known as 'The Raddison Wichita Hotel,' is not used exclusively" for any exempt purpose.

On appeal Defenders asks this court to do two things. First, it asks us to determine that the building is severable so that the portions which are being used exclusively for religious or charitable purposes may be declared exempt. As it says in its brief, "[a]ppellant makes no claim for exemption from ad valorem taxation for that portion of the ground floor of the Wichita Defenders Townhouse which is leased to commercial tenants who operate a restaurant, beauty parlor, pharmacy and gift shop."

Second, Defenders asks us to determine that its home for senior citizens is a charitable use and that its offices and printing operations are religious uses. It is apparent that unless the building is declared severable for tax purposes we need not reach this second step.

In *Lutheran Home, Inc., v. Board of County Commissioners,* supra, we reviewed the principles which have governed tax exemption claims in this state since statehood, and summarized them as follows:

"(1) Constitutional and statutory provisions exempting property from taxation are to be strictly construed.

"(2) The burden of establishing exemption from taxation is on the one claiming it.

"(3) The exemption from taxation depends solely upon the exclusive use made of the property and not upon the ownership or the character, charitable or otherwise, of the owner.

"(4) The test of whether an enterprise is charitable for ad valorem tax purposes is whether its property is used exclusively to carry out a purpose recognized in law as charitable.

"(5) The question is not whether the property is used partly or even largely for the purposes stated in the exemption provisions, but whether it is used exclusively for those purposes. (*Clements v. Ljungdahl,* 161 Kan. 274, 278, 167 P. 2d 603; *State, ex rel., v. Security Benefit Ass'n,* 149 Kan. 384, 87 P. 2d 560.)

"(6) The phrase 'used exclusively' as contained in Section 1, Article 11, of the Kansas Constitution, was intended by the framers in the sense that the use made of property sought to be exempt from taxation, must be only, solely, and purely for the purposes stated in the Constitution, and without admission to participation in any other use. (*Sigma Alpha Epsilon Fraternal Ass'n v. Board*

*of County Comm'rs.,* [207 Kan. 514, 485 P. 2d 1297].)" (*Id.,* 211 Kan. at 275-6.)

Defenders professes to have no quarrel with any of these well established rules, but insists that even under the "strict construction" doctrine espoused in *Lutheran Home* our constitution and statute require a partial exemption. We cannot agree.

Defenders necessarily relies on cases from other jurisdictions, and particularly the annotation in 159 A. L. R. 685 which states:

"By the great weight of authority, a statute which in effect exempts from taxation property or buildings used for certain purposes authorizes a partial exemption of a building in case the building is used in part for exempt purposes and in part for nonexempt purposes." (*Id.,* at 687.)

Cases from twenty-four states and one Canadian province are cited in support of this statement, while only four states are listed as taking the view that where a building is used in part for exempt purposes and in part for nonexempt purposes the entire building is to be taxed.

Despite the numbers arrayed against us we prefer to align ourselves with the minority. Our assessment and collection statutes, designed to implement and conform with our constitution, contain no procedure for separately assessing a portion of a building under one ownership, and no procedure for collecting taxes on a part of such a building in case of delinquency. Had the legislature intended such a procedure to be followed it surely would have so provided.

Our neighboring state of Missouri found such a statutory void persuasive on the issue over a century ago in *Wyman v. City of St. Louis,* 17 Mo. 335 (1852). There the top two floors of a four-story building were used as a school, while the first floor contained stores and the second was used partly for the school and partly as a concert hall for hire. The owner sought to enjoin the collection of half the taxes on the basis of the one-half of the building used for school purposes. The court first commented on the incongruity which results "when religion and learning are mingled with trading and trafficking—with fiddling and singing." It went on to observe:

". . . Equality is equity, and when one claims an exemption from a burden to which all others are subject, and whose freedom will increase their load, he must clearly show himself in the situation which entitles him to the exemption claimed. This is not a case in which different owners are possessed of different floors of the same house. There is but one owner for the entire building, and it is in his power to control the uses to which it shall be subject. If the use of a part of a building, as a school house, will exempt it from taxation, then, it being a school house, it should not be sold for the nonpayment

of taxes. Indeed it cannot be. But if the part occupied for other purposes, should be in arrears for taxes, would not the school house exempt it too from sale? If this is so, then the construction of the act contended for would enable property holders to place it beyond the power of the law to enforce the collection of the taxes due upon it." (*Id.*, p. 337.)

Missouri has consistently followed this nonapportionment rule, as reflected in the recent case of *City of St. Louis v. State Tax Commission*, 524 S. W. 2d 839 (Mo. 1975):

"Missouri does not follow the partial-exemption theory, and if any part of the property is used for a non-charitable purpose the whole is taxable. Evangelical Lutheran Synod, etc. v. Hoehn, 355 Mo. 257, 196 S. W. 2d 134, 145 (1946), Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S. W. 2d 38, 39 (1948)." (*Id.* at 843.)

The same line of reasoning led to the same result in *Gymnastic Association v. Milwaukee*, 129 Wis. 429, 109 N. W. 109, where there was an attempt to sever the exempt educational uses of the first floor of a building from the nonexempt saloon and barbershop in the basement. The court refused to do so, saying:

". . . The property in question is a single nonseverable building together with the ground on which it stands. Only when the 'property' is exclusively used for educational purposes can it be exempt at all. It seems obvious that a single indivisible piece of property cannot, in any proper sense, be exclusively so used when parts of it are permanently occupied for other purposes. True, some courts have held that there might be a valuation and assessment of the part used for noneducational purposes, but usually by virtue of some procedure for severance authorized by legislation." (*Id.*, 129 Wis. at 438.)

After referring to a case where it had refused to sever, for the purpose of an execution sale, a part of a building used as a homestead, the Wisconsin court went on to say:

". . . Again, in *Milwaukee & St. P. R. Co. v. Crawford Co.* 29 Wis. 116, 125, where part of a building was used for proper railway purposes and part not, it was declared impracticable to sever for purposes of taxation. That is obviously so under our present laws for levy and enforcement of taxes on real estate which provide no rule or process for either valuing or selling any fractional interest or any, other than vertical, section of land with a single building on it. [Citation omitted.] Until some such provision is made we must hold that the whole of an indivisible building, and the ground on which it stands, is subject to taxation unless the whole is rendered exempt by being used exclusively for educational purposes in the natural and exact significance of those words." (*Id.*, 129 Wis. at 438-9.)

(Later, in 1931, Wisconsin enacted a statute providing for partial exemption. See, *Trustees of Clinton Lodge v. Rock County*, 224 Wis. 168, 272 N. W. 5.)

To the same effect is *State v. Bridges*, 246 Ala. 486, 21 So. 2d 316,

159 A. L. R. 678, where a three-story building had a school on the top two floors and commercial tenants on the first. Apportionment was rejected, the court saying:

".  .  . To justify a holding that a business structure with single ownership was subject to division as to valuation for taxation assessment purposes it appears to us quite clear there must be a statute which is subject to such construction." (*Id.*, 246 Ala. at 490.)

Noting that a different result might obtain if the separate parts of the building were under separate ownerships, the court went on:

".  .  . Here we are concerned only with the building and the lot on which it is located, all under a single ownership. Under such circumstances, we are fully persuaded the language of our tax assessment statute cannot reasonably be construed as justifying any such division of the property for such taxation purposes. We have not overlooked the cases cited in other jurisdictions which appear to hold to the contrary. But so conceding, we cannot follow in their wake. To our way of thinking, such an interpretation would be a most liberal one, wholly unjustified unless language so indicated, and directly contrary to the rule of strict construction applicable to exemptions from taxation." (*Id.*, 246 Ala. at 490.)

The underlying reason for the Alabama decision was the lack of any statutory provision for collecting delinquent taxes by sale, the court relying on *Wyman v. City of St. Louis,* supra.

South Dakota was even more succinct in rejecting the apportionment concept. In *State ex rel. Hayes v. Board of Equalization,* 16 S. D. 219, 92 N. W. 16, the court said:

"It is held in some jurisdictions that where property is used for different purposes, or, as in this case, where a part of the building if used for other than charitable purposes, there may be a due apportionment of values in the assessment, so as to confine the exemption to so much of the value as the privileged part represents. [Citation omitted.] We cannot subscribe to this doctrine. It conflicts with the letter and spirit of our constitution. Any quantity of real property so situated as to be properly assessed as one tract or parcel, under one description, should be treated as an entirety, all or not part of which is taxable." (*Id.*, 16 S. D. at 227.)

Typical of cases on the other side of the ledger is *Christian Business Men's Committee v. State,* 228 Minn. 549, 38 N. W. 2d 803. There the court apportioned a three-story building between the commercial nonexempt first-floor uses, and the charitable exempt uses of the basement, second and third floors. The court rejected as unsuited to modern times the "assumed arbitrary rule of thumb that a building is necessarily taxable or nontaxable in its entirety." (228 Minn. at 558.) As to the problems of assessment and collection

which trouble this court, the majority of the Minnesota court brushed them off in these words:

"Where, as here, we have divisions within the buildings by floors—or by rooms of a substantial size—there is no insurmountable. difficulty in effecting an apportionment. Likewise, there is no insurmountable difficulty in enforcing a collection of the tax. A substantial and certain fractional part of realty obviously may be sold for nonpayment of an ad valorem tax, and in the event the purchaser thereby ultimately acquires a title in fee he may, if necessary, segregate or sell his interest therein through partition proceedings." (*Id.*, 228 Minn. at 560.)

The dissenter took the position that a single piece of property is "either wholly tax-exempt or wholly tax-liable." (p. 562.) On rehearing the mechanical problems were discussed at greater length, with the majority adhering to its previous view that "[t]he absence of special statutory machinery for assessing property on the basis that a single parcel may be pro rata exempt from taxation and pro rata taxable according to its separate uses presents no practical difficulty." (p. 564.) It relied on prior decisions of that court which had upheld separate assessment and taxation of the right to cut timber from exempt land and of separately owned interests in oil, gas and other minerals.

We have no disagreement with the Minnesota court's statements as to "practical difficulty" when it comes to appraisal of severed interests in property. Our tax statutes deal with tracts which have been partitioned (K. S. A. 79-419) or divided (K. S. A. 75-425) and with mineral rights which have been severed (K. S. A. 79-420). They also deal with condominiums, or "apartments" in one building under separate ownerships (K. S. A. 58-3122). But nowhere do they deal with the assessment of separate parts of a single building under one ownership. Our conclusion is not that such an assessment is impossible or even fraught with "insurmountable difficulty" but simply that our statutes do not contemplate it, and that our legislature did not intend it.

We wish to emphasize that we are dealing here with a single building, under a single ownership which has not been severed in any legally recognized manner. Property which has been or is readily capable of severance, either physically or as to ownership, is in an entirely different category. See, *e. g., Seventh Day Adventist v. Board of County Commissioners,* 211 Kan. 683, 508 P. 2d 911, where we separately treated individually described tracts of land attached to a school according to their respective uses; and *Mount Hope Cemetery Co. v. Pleasant,* 139 Kan. 417, 32 P. 2d 500, where

we separately treated 90 acres used for burial and 70 acres used as a hay meadow, out of a quarter section of land belonging to a cemetery company. But cf., *City of Winfield v. Board of County Commissioners*, 205 Kan. 333, 469 P. 2d 424, where we treated a municipal airport as an entity despite the incidental use for raising wheat of 634.3 acres out of 1386.

As to the problem of tax collection through sale of an undivided portion of a building—here the first floor of a ten-story building— we are not so sanguine as the Minnesota court. Just a few of the questions that would arise after a purchaser bought the first floor include: Who would be responsible for the operation and maintenance of the elevators, heating, cooling, electrical and other mechanical systems? Would there be an easement through the lobby for access to the other floors? If so, who would be required to maintain the lobby and see to its safety? What kind of insurance would be required of the respective owners? These and many more are all questions which could and would be resolved by parties voluntarily entering into an agreement for joint occupancy before consummating the agreement. A purchaser of one floor at a tax sale, however, would be taking his chances; he would have no guarantee that he could ever reach a satisfactory agreement with his co-worker. Compare, *e. g.,* the elaborate provisions for accommodating the interests of co-owners in the Apartment Ownership Act, K. S. A. Ch. 58, Art. 31, as amended.

The Minnesota court suggests that the purchaser of a part of a building could, "if necessary, segregate or sell his interest therein through partition." The result, as we see it, would be a forced sale of the entire building, thus defeating the interests of the exempt user.

Florida, on the other hand, posed what we see as an administrative dilemma when it adopted the pro rata exemption doctrine. In *State ex rel. The Cragor Company v. Doss*, 150 Fla. 491, 8 So. 2d 17, a four-to-three decision, the majority approved the partial exemption rule without discussion, as being supported by "the best reasoned authority in this country." It went on to say:

". . . It is not out of place to state however that if the taxes on the taxable portion are not paid and a sale for non payment of taxes should become necessary, the entire property *may have to be* sold." (*Id.,* 150 Fla. at 495. Emphasis added.)

The emphasized language seems to imply that in some cases the entire property would be sold—including the exempt portion—

while in others only the taxable portion would be sold. No criteria are suggested for determining which course should be followed in a particular case. If the taxing authorities should decide to sell the entire building the exemption would be as obviously lost as in a partition sale. The difference is that a sale of exempt property for taxes raises constitutional problems not presented by a sale in a partition suit. If only the taxable portion were sold at the tax sale, partition would frequently follow for reasons discussed above, with the same result.

We think the divergent views of the Minnesota and Florida courts on the mechanics of collection illustrate the hazards encountered when the judiciary forays into an area of taxation wholly uncharted by the legislature. It is a legislative function to determine how delinquent taxes are to be collected, including what property or portions thereof are to be sold, subject only to constitutional limitations. If the purchaser at a tax sale is to be the purchaser of a partition suit, the legislature is the body to so declare. Further, if a partial exemption is to be granted we believe it is the legislature's function to do so—we do not read our constitution as requiring it.

We therefore hold that in the absence of a statute to the contrary, where a single building is under single ownership so that it is listed for taxation as an entity, the nonexempt use of any portion of the building renders the entire building taxable.

Here, the first floor of the building was concededly used for a nonexempt purpose. It follows that the board of tax appeals and the district court correctly denied exempt status for the entire building, regardless of the use made of the remainder.

The judgment is affirmed.

APPROVED BY THE COURT.