Flav-O-Rich, Inc., appeals from a judgment in favor of the City of Birmingham, which had brought this action in the Circuit Court of Jefferson County to recover the unpaid portion of certain municipal use taxes and business license fees. We affirm.
The City of Birmingham claims that Flav-O-Rich owes $13,748.65 in license fees and $4,253.56 in use taxes. Flav-O-Rich, by counterclaim, alleged that it has overpaid and is entitled to recover $50,809.02 in license fees and $1,190.93 in use taxes. There is no dispute as to the amount of money in each category.
Dairymen, Inc. (Dairymen), is an agricultural cooperative organized under Kentucky law and is an association of dairy farmers who market their raw milk through it. Flav-O-Rich, also organized under Kentucky law, is a subsidiary of Dairymen[1] and was established to market its products. Dairymen has approximately 8,000 dairy farmer members, of which 178 are in Alabama. Flav-O-Rich purchases all of its milk from Dairymen, which, in turn, purchases that milk from both members and non-members.
Flav-O-Rich markets a line of products for Dairymen designed to be competitive with the products of other distributors in the market place. However, this product line is not limited to the dairy products of Dairymen, but includes certain non-dairy products produced by non-members, such as orange juice manufactured from a juice concentrate, hard cheese, sausage, biscuits, bread, ice cream cones, and fruit punch purchased in the form of a base and mixed with water. Less than 15% of Flav-O-Rich's sales are derived from the non-dairy products which are not produced by its members.
Flav-O-Rich contends that it is exempt from payment of the fees and taxes in question under §§ 2-10-105, 11-51-105, and40-9-1 (12), Ala. Code 1975, and §§ 18 (b), (c), and (d), 19, and 20 of the License Code of the City of Birmingham. The only issue in this case is whether the trial court erred to reversal in finding that Flav-O-Rich was not eligible for an exemption under any one of those sections.
The general rule in construing statutes granting exemption from taxation has been stated thusly:
 "`The "universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision."' State v. Bridges, 246 Ala. 486, 489, 21 So.2d 316, 317, 159 A.L.R. 678.
 `It has long been the rule in this state that one seeking an exemption from taxation assumes the burden to clearly establish the right. In all cases of doubt as to legislative intention, the presumption is in favor of the taxing power. Title Guarantee Loan and Trust Co. v. Hamilton, 238 Ala. 602, 193 So. 107, 108
[1940]; Curry v. Reeves, 240 Ala. 14, 15, 195 So. 428, 430 [1940].'"
Brundidge Milling Co. v. State, 45 Ala. App. 208, 210,228 So.2d 475, 477 (1969). However, such exemption clauses are not to be so strictly construed as to defeat or destroy the intent and purpose of the statute, and no strained statutory construction is to be given which would have that effect. Our responsibility is to give effect to the legislative intention where it is manifested. State v. Union Tank Car Co., 281 Ala. 246, 201 So.2d 402 (1967).
Section 2-10-105, supra, reads as follows:
 "Any corporation or association organized under this article shall pay to the state the annual permit fee of $10.00 now *Page 49 
required by law and shall pay all ad valorem taxes on its real and personal property; except, that all cotton and all other agricultural products which have been raised or produced in the state of Alabama, title to which may be held by such corporation or association in its own right or for the use and benefit of its members, and all goods and articles purchased or acquired by such corporation, whether in or out of the state, for its own use or for the use and benefit of its members for strictly agricultural or farm purposes in this state, shall, so long as held by such corporation or association, be exempt from taxation, nor shall such corporation be liable for any other license or privilege fee or tax for the purpose of engaging in or transacting business or otherwise in this state."
Chapter 10, consisting of §§ 2-10-1 through 2-10-108, Ala. Code 1975, deals with agricultural cooperatives and associations. These sections are divided into four articles, which are as follows: Article 1, General Provisions (§ 2-10-1); Article 2, Marketing Associations Generally (§§ 2-10-20 through2-10-35); Article 3, Incorporated Marketing Associations (§§2-10-50 through 2-10-74); and Article 4, Mutual Farming or Trucking Associations (§§ 2-10-90 through 2-10-108). Articles 1 and 3 originated in the Acts of 1921, Article 2 came from the Agricultural Code of 1927, and Article 4 came from the Acts of 1935. While Articles 3 and 4 set forth separate and distinct schemes for the formation of cooperatives and associations, Articles 1 and 2 are intended to apply to all cooperatives and associations formed under any of these sections.
The trial court found that Flav-O-Rich was not eligible for the exemption under § 2-10-105 because it failed to secure a permit from the Commissioner of Agriculture and Industries pursuant to § 2-10-21, which reads as follows:
 "No association shall engage in business until it has first secured a permit from the commissioner. Application for such permit shall be made on blanks prescribed by the state board of agriculture and industries and shall be accompanied by a fee of $5.00."
We agree. The accompanying sections of Article 2 set out the supervisory and investigatory powers of the Commissioner of Agriculture with respect to the formation of cooperatives and associations in this State. Section 2-10-105 provides an exemption to any corporation or association organized under Article 4. Any domestic corporation or association not complying with the prerequisites enumerated in Article 2, namely § 2-10-21, would not be "organized" under the article within the meaning of § 2-10-105 and, thus, would be ineligible for the exemption. Flav-O-Rich, although organized under the laws of Kentucky, commenced operations in Alabama in 1972, but failed to obtain the applicable permit until 1984. Consequently, for approximately 12 years, it was not authorized to engage in business in this state.[2] *Page 50 
Therefore, it follows that Flav-O-Rich's failure to comply with the provisions of Article 2 also renders it ineligible for the exemption contained in § 2-10-105.
Flav-O-Rich also contends that it is exempt under §11-51-105, supra. That section reads as follows:
 "It shall be unlawful for any municipality to charge the farmers or others engaged in the production of farm products of whatever nature any license or fee for the sale or other disposition of said articles produced by them at any place."
Noting that there are no cases construing this section, the trial court found that its applicability did not extend to Flav-O-Rich. Again, we agree, because Flav-O-Rich is not actually "engaged in the production of farm products" within the meaning of this section. Instead, it markets a line of products designed to be competitive with the products of other distributors in the market place. This product line is not limited to the dairy products of Dairymen, but includes other non-dairy products such as orange juice manufactured from a juice concentrate, fruit punch, sausage, bread, ice cream cones, hard cheese, and biscuits, all of which are not produced by its members.[3] When the farmers sell their products to Dairymen for further processing and marketing under the Flav-O-Rich name, § 11-51-105 does not extend the farmer's exemption to the subsequent sale.[4]
Finally, Flav-O-Rich argues that it is entitled to an exemption under § 40-9-1 (12), supra. That section begins with the following language: "The following property and persons shall be exempt from ad valorem taxation and none other. . . ." Following this specific reference to ad valorem taxes, there are 23 subsections which cover different types of property or entities. Of these 23 subsections, all but subsection 12 clearly refer to items which would be exempt from ad valorem taxes. However, subsection 12 reads as follows: *Page 51 
 "(12) No license or taxation of any character, except franchise taxes provided by section 229, of the Constitution of the state of Alabama, shall be collected or required to be paid to the state, or any county or municipality therein, by any state or county fair, agricultural association, stock, kennel or poultry show, athletic stadiums owned and controlled by universities, schools or colleges and which are used exclusively for the purpose of promoting intercollegiate or interschool athletics; provided, that the revenue received from athletic stadiums, when admission is charged, shall be used for the benefit of athletic associations of such universities, colleges or schools. Nothing contained in this subdivision shall be construed to prohibit any municipality, county or state from imposing any license tax upon or for the privilege of engaging in the business of supplying services for hire or reward or selling commodities other than livestock, farm products or farm implements or conducting or operating devices or games of skill or amusements or other games or devices, or conducting or operating shows, displays or exhibits other than shows, displays or exhibits of agricultural implements, farm products, livestock and athletic prowess. . . ."
The trial court, applying the principle of "ejusdem generis",[5] found that § 40-9-1 (12) was not applicable to Flav-O-Rich because it exempted only the payment of ad valorem taxes, which are not at issue. Flav-O-Rich insists that it is exempt under subsection 12 and that the principle of "ejusdem generis" should not restrict its application in this case. It argues that subsection 12 manifests a clear intention to provide an exemption to agricultural associations from "taxation of any character," not just ad valorem taxes.
We pretermit a discussion of the propriety of the trial court's application of the "ejusdem generis" principle, as we hold that subsection 12 exempts only the shows of agricultural associations and, therefore, is not applicable to Flav-O-Rich within the context of the present case. Subsection 12 evidences an intention on the part of the legislature to exempt certain athletic, educational, and entertainment "events," including state or county fairs, and stock, kennel, or poultry shows. It is logical then that "agricultural association" within the context of subsection 12 is in reference to a show. This construction is also strengthened by the legislature's grant of the exemption to agricultural cooperatives and associations in § 2-10-105, supra.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON and BEATTY, JJ., concur.
[1] Both Dairymen and Flav-O-Rich are agricultural cooperative associations qualified under 7 U.S.C. § 291 et seq. (1976), the Capper-Volstead Act.
[2] Flav-O-Rich asserts that it was granted retroactive authorization to engage in business in Alabama. It argues that it has secured two permits from the Department of Agriculture and Industries. It appears from the record that the first permit was invalid on its face because it was issued on September 10, 1984, and expired on August 31, 1984. The second permit was issued on September 10, 1984, and expires on August 31, 1985. In connection with this permit, Flav-O-Rich further argues that it has always been recognized as an agricultural association in good standing with the Alabama Department of Agriculture and industries, as evidenced by the following memorandum introduced into evidence:
"MEMORANDUM
"TO: Mr. Allen Leistner, Dairymen, Inc.
"FROM: Randy W. Alford, Marketing Division
"SUBJECT: Taxation of Agricultural Marketing Associations
 "According to Title 2, Section 2-10-105 of the Code of Alabama, 1975, which says:
 "`Any corporation or association organized under this article shall pay to the state the annual permit fee of $10.00 now required by law and shall pay all ad valorem taxes on its real and personal property; except, that all cotton and all other agricultural products which have been raised or produced in the state of Alabama, title to which may be held by such corporation or association in its own right or for the use and benefit of its members, and all goods and articles purchased or acquired by such corporation, whether in or out of the state, for its own use or for the use and benefit of its members for strictly agricultural or farm purposes in this state, shall, so long as held by such corporation or association, be exempt from taxation, nor shall such corporation be liable for any other license or privilege fee or tax for the purpose of engaging in or transacting business or otherwise in this state.'
 "The By-Laws and Articles of Incorporation of Dairymen, Inc., and Flav-O-Rich, Inc., have been accepted by the Alabama Department of Agriculture and Industries as indications that these corporations have been established and operate as agricultural cooperatives within Alabama.
 "Due to an oversight by the cooperatives, they failed to apply for a cooperative permit issued by this Department when they first began operating in Alabama. This situation has been remedied and Flav-O-Rich, Inc., has a valid current cooperative permit. As for previous years of operation, the Articles of Incorporation and By-Laws approved by this Department were valid and consequently, the corporation was performing as an agricultural cooperative with all the benefits and responsibilities which this encompasses."
We agree with the trial court that the issuance of the second permit running from September 10, 1984, to August 31, 1985, and the above memorandum do not constitute a retroactive permit. The two documents are nothing more than a recognition that Flav-O-Rich was entitled to a permit during that period.
[3] Flav-O-Rich argues that such products are necessary to enable it to compete in the marketing of its processed dairy products and that the members of Dairymen should not lose their status as farmers merely by joining together in a cooperative association to market their product. Our interpretation of this section, however, as being inapplicable to Flav-O-Rich is strengthened by the legislature's express grant of an exemption to agricultural cooperatives and associations in § 2-10-105,supra. We also note that the legislature has defined producersof agricultural products as "individual persons, partnerships, associations and corporations who produce such products either directly or as landlords, tenants or sharecroppers." See §2-10-90 (1), supra. Flav-O-Rich does not fit within this definition.
[4] Section 18 (b) of the License Code of the City of Birmingham has a field of operation similar to that of § 11-51-105. It reads as follows:
 "No license shall be required of any farmer, or other individual engaged in the production of farm products for the sale or other disposition of articles produced by them."
Sections 18 (c) and (d), 19, and 20 contain provisions for the establishment of the exemption granted in § 18 (b).
[5] It is a general principle of statutory construction that where general words follow the enumeration of particular classes of persons or things, the general words may be construed under the "ejusdem generis" rule as being applicable only to persons or things of the same general nature or class as those specifically enumerated. Ross Jewelers v. State,260 Ala. 682, 72 So.2d 402, 43 A.L.R.2d 851 (1953); Goode v. Tyler,237 Ala. 106, 186 So. 129 (1939).