11 So.3d 821 (2008)
ALABAMA DEPARTMENT OF REVENUE
v.
The NATIONAL PEANUT FESTIVAL ASSOCIATION, INC.
2070123.
Court of Civil Appeals of Alabama.
November 7, 2008.
Rehearing Denied December 19, 2008.
*823 Troy King, atty. gen., and Ron Bowden, asst. atty. gen. and counsel, and David E. Avery III, asst. atty. gen. and asst. counsel, for appellant Alabama Department of Revenue.
R. Eugene Clenney, Jr., of Johnston, Hinesley, Flowers, Clenney & Turner, *824 P.C., Dothan; and Alan C. Livingston of Lee & McInish, P.C., Dothan, for appellee.
Bruce P. Ely and Matthew S. Houser of Bradley Arant Rose & White, LLP, Birmingham, for amicus curiae Association of Alabama Fairs, in support of the appellee.
MOORE, Judge.
The Alabama Department of Revenue ("the Department") appeals from a judgment of the Houston Circuit Court holding that The National Peanut Festival Association, Inc. ("the taxpayer"), was entitled to a refund of taxes and interest paid to satisfy a final assessment entered on July 31, 2006.

Background
The taxpayer is a nonprofit corporation whose objective, according to its bylaws, is to promote interest in peanuts and peanut farming. Pursuant to that objective, and to also further interests in agriculture in general, the taxpayer holds an annual event known as the National Peanut Festival ("the Festival") in Dothan. At that event, the taxpayer displays exhibits regarding peanuts, peanut farming, and other agricultural pursuits, as well as livestock. Those exhibits are housed in large buildings, the cost of which were financed in part by the United States Department of Agriculture based on its determination that the Festival is an agricultural fair. The taxpayer is a member of the Alabama State Fair Association, which enables the taxpayer to receive funds annually from the Alabama Department of Agriculture. In 2004 and 2005, the Alabama Department of Agriculture cosponsored the Festival and paid a portion of the premiums, prizes, and awards listed in the agricultural program conducted at the Festival for those years.
As an integral part of the Festival, two to three weeks before the opening of the Festival, the taxpayer holds a "Little Miss" pageant and a "Big Miss" pageant in the Dothan Civic Center. The purpose of those pageants is to select ambassadors to promote the Festival. The winners of those pageants attend agricultural and other events throughout the year. In addition to the beauty pageants and the agricultural exhibits, the Festival also consists of scheduled musical concerts, a parade, and a midway. The purpose of the midway and the concerts is to promote attendance at the Festival. The taxpayer conducts all aspects of the Festival except for the midway, which is operated by an independent carnival company unrelated to the taxpayer.
The testimony of the president and the administrative assistant of the taxpayer establishes that the taxpayer sells tickets to the Festival events in primarily two different ways. First, the taxpayer offers "patron's packages." For $125, a purchaser of a "patron's package" receives two week-long admission passes worth $126, along with trinkets, peanuts, and peanut products of nominal value.[1] The passes grant the patron access to the fairgrounds on which the agricultural exhibits, concerts, and midway are conducted. The package also contains separate tickets to the pageants, and, by request, a patron can receive tickets to a viewing stand to watch the Festival parade. Second, the taxpayer sells individual daily admission tickets and sells separate tickets to its pageants. The daily admission tickets allow the purchaser access to the fairgrounds while the pageant tickets allow access only to the pageants. In order to take part in the midway attractions, the *825 patron must purchase a separate ticket from the carnival company.[2] For the purposes of this appeal, we will refer to the patron's package, the daily admission tickets, and the tickets to the beauty pageants collectively as "the admission tickets."
At least since the 1980s, the taxpayer has collected and remitted sales taxes on its receipts from the sale of the admission tickets. In 2003, the taxpayer collected the sales tax as it had before, but it did not remit those taxes to the Department. The president of the taxpayer testified that, at a 2003 meeting of the Alabama State Fair Association, several representatives of other state fairs informed the taxpayer that it had been erroneously paying sales taxes on the receipts of its sale of admission tickets because the legislature had established a statute exempting state fairs from the payment of taxes.
The Department entered a final assessment against the taxpayer for its nonpayment of the 2003 sales taxes, and the taxpayer subsequently paid those taxes, along with interest and penalties. In 2004, the taxpayer filed a civil action seeking a refund of taxes it had previously remitted to the Department. The judgment resulting from that action was not introduced into evidence at the trial of this case and is not contained in the appellate record.
In 2004 and 2005, the taxpayer did not collect or remit sales taxes on any of its admission-ticket sales. After an audit, the Department, on July 31, 2006, entered a final assessment against the taxpayer for the sales taxes, penalties, and interest for those years. The taxpayer paid the assessment out of its own funds under protest and, pursuant to § 40-2A-7(b)(5), Ala. Code 1975, a part of the Taxpayers' Bill of Rights, § 40-2A-1 et seq., Ala.Code 1975, filed an immediate appeal to the Houston Circuit Court ("the trial court"), seeking a refund of the taxes and penalties it had paid, along with accrued interest. On January 12, 2007, the Department filed an answer denying that any refund was due and filed a counterclaim seeking the payment of additional taxes.[3] On October 19, 2007, after a hearing, the trial court entered a judgment finding that the taxpayer was entitled to a full refund because, it held, the taxpayer was exempt from the payment of sales taxes by virtue of § 40-9-1(12), Ala.Code 1975.[4] The Department timely appealed to this court on November 6, 2007.

Issue
The sole issue on appeal is whether § 40-9-1(12) exempts the taxpayer from paying sales taxes on the receipts of the sale of the admission tickets to its Festival and its beauty pageants.

Standard of Review
The parties agree that the essential facts were undisputed before the trial *826 court. Thus, this court applies a de novo standard of review to determine whether the trial court properly applied the law to the facts of this case. See Carter v. City of Haleyville, 669 So.2d 812, 815 (Ala.1995).

Analysis

Collateral Estoppel
As a preliminary issue, the taxpayer argues that the Department was estopped to relitigate the issue of whether § 40-9-1(12) exempts the taxpayer from paying taxes on the sale of the admission tickets. The taxpayer claims that the trial court decided that issue in the taxpayer's favor as a necessary part of the trial court's judgment in the 2004 litigation. See Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 795-96 (Ala.2007) ("Collateral estoppel applies when (1) the issue in a prior case was identical to the issue being litigated in the present action, (2) the issue was actually litigated in the prior action by a court of competent jurisdiction, (3) resolution of that issue was necessary to the prior judgment, and (4) the same parties are involved in the two actions.").
We note that although the trial court discussed the collateral-estoppel issue with the attorneys for the parties during the trial and was well aware of its judgment in the prior action, the trial court did not rest its decision on the doctrine of collateral estoppel. We can "affirm [a judgment] on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court." Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003) (emphasis added). However, the judgment from the 2004 action is not contained in the appellate record; it is only attached to the taxpayer's brief.
"Appellate courts are not permitted to consider matters outside the record. See, e.g., Etherton v. City of Homewood, 700 So.2d 1374, 1378 (Ala.1997). `"`[A]ttachments to briefs are not considered part of the record and therefore cannot be considered on appeal.'"' Roberts v. NASCO Equip. Co., 986 So.2d 379, 385 (Ala.2007) (quoting Morrow v. State, 928 So.2d 315, 320 n. 5 (Ala.Crim. App.2004), quoting in turn Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App.1991))."
Ex parte Ruggs, [Ms. 1061379, Aug. 22, 2008] 10 So.3d 7, 10 n. 2 (Ala.2008). Furthermore, we cannot take judicial notice of another court's records. See Warren v. Wester, 827 So.2d 116, 119 n. 3 (Ala.Civ. App.2002); Worthington v. Amerson, 741 So.2d 437, 438 n. 2 (Ala.Civ.App.1999); and Lyle v. Eddy, 481 So.2d 395, 397 (Ala.Civ. App.1985). Because the judgment in the 2004 action is not properly before this court, we are unable to review that judgment and, thus, cannot determine whether all the elements of collateral estoppel have been satisfied. We, therefore, decline to affirm the judgment based on the doctrine of collateral estoppel.

The Meaning of § 40-9-1(12)
As recognized in Flav-O-Rich, Inc. v. City of Birmingham, 476 So.2d 46 (Ala.1985):
"The general rule in construing statutes granting exemption from taxation has been stated thusly:
"`"The `universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision.'" *827 State v. Bridges, 246 Ala. 486, 489, 21 So.2d 316, 317, 159 A.L.R. 678 [(1945) ].
"`It has long been the rule in this state that one seeking an exemption from taxation assumes the burden to clearly establish the right. In all cases of doubt as to legislative intention, the presumption is in favor of the taxing power. Title Guarantee Loan and Trust Co. v. Hamilton, 238 Ala. 602, 193 So. 107, 108 [1940]; Curry v. Reeves, 240 Ala. 14, 15, 195 So. 428, 430 [ (1940) ].'
"Brundidge Milling Co. v. State, 45 Ala. App. 208, 210, 228 So.2d 475, 477 (1969). However, such exemption clauses are not to be so strictly construed as to defeat or destroy the intent and purpose of the statute, and no strained statutory construction is to be given which would have that effect. Our responsibility is to give effect to the legislative intention where it is manifested. State v. Union Tank Car Co., 281 Ala. 246, 201 So.2d 402 (1967)."
476 So.2d at 48. Based on those rules of statutory construction, we must first decide the general meaning of § 40-9-1(12) and then apply that meaning to the facts of this case to determine if the trial court correctly determined that the taxpayer was entitled to a refund based on the exemption provided in that statute.
Section 40-9-1, Ala.Code 1975, provides, in part:
"The following property and persons shall be exempt from ad valorem taxation and none other:
"....
"(12) No license or taxation of any character, except franchise taxes provided by Section 229 of the Constitution of the State of Alabama, shall be collected or required to be paid to the state or any county or municipality therein by any state or county fair, agricultural association, stock, kennel or poultry show.... Nothing contained in this subdivision shall be construed to prohibit any municipality, county or state from imposing any license tax upon or for the privilege of engaging in the business of ... conducting or operating devices or games of skill or amusements or other games or devices, or conducting or operating shows, displays or exhibits other than shows, displays or exhibits of agricultural implements, farm products, livestock and athletic prowess."
(Emphasis added.)
In Flav-O-Rich, supra, our supreme court noted that "[f]ollowing th[e] specific reference to ad valorem taxes, there are 23 [now 26] subsections which cover different types of property or entities. Of these... subsections, all but subsection 12 clearly refer to items which would be exempt from ad valorem taxes." 476 So.2d at 50 (emphasis added). A current review of § 40-9-1 affirms that, except for § 40-9-1(12), all the subsections of the statute clearly describe items of property that would otherwise be subject to ad valorem taxes if not specifically exempted by the statute. One part of § 40-9-1(12) not quoted above also exempts certain athletic stadiums from ad valorem taxation. However, the remainder of § 40-9-1(12) does not describe any particular property that would be exempt from ad valorem taxes. Instead, "[§ 40-9-1(12)] evidences an intention on the part of the legislature to exempt certain athletic, educational, and entertainment `events,' including state or county fairs, and stock, kennel, or poultry shows." 476 So.2d at 51. Events such as fairs and agricultural-association shows are not property, which is the only subject of ad valorem taxation. See Black's Law Dictionary 1496 (8th ed.2004) (defining an *828 ad valorem tax as "[a] tax imposed proportionally on the value of something (esp. real property)").
In Flav-O-Rich, supra, the lower court applied the rule of ejusdem generis to find that the § 40-9-1(12) exemption applies only to ad valorem taxes. The rule of ejusdem generis
"is a general principle of statutory construction that where general words follow the enumeration of particular classes of persons or things, the general words may be construed ... as being applicable only to persons or things of the same general nature or class as those specifically enumerated. Ross Jewelers v. State, 260 Ala. 682, 72 So.2d 402, 43 A.L.R.2d 851 (1953); Goode v. Tyler, 237 Ala. 106, 186 So. 129 (1939)."
Flav-O-Rich, 476 So.2d at 51 n. 5. See also Ex parte Emerald Mountain Expressway Bridge, L.L.C., 856 So.2d 834 (Ala.2003). Although that rule is helpful in some cases to determine legislative intent, it cannot be readily applied to this case. Section 40-9-1(12) does not generally describe some type of property in the classes of property specifically enumerated in the other subsections of the statute; rather, § 40-9-1(12) states a specific rule of taxation applicable to specific events that is totally different from the general rule of taxation applying to the property described in the remainder of the statute.
As the supreme court held in Flav-O-Rich, the intent of the legislature in enacting § 40-9-1(12) was to exempt certain "events" from taxation. 476 So.2d at 51. Subsection 40-9-1(12) plainly states that no "state or county fair, agricultural association, stock, kennel or poultry show" shall be required to collect or to pay "to the state or any county or municipality" a "license or taxation of any character." To read that language as applying only to ad valorem taxation would not only ignore the general inapplicability of ad valorem taxation to such events, but would also render the phrase "taxation of any character" meaningless. The rules of statutory construction set out in Flav-O-Rich do not allow us to defeat the exemption in § 40-9-1(12) by reading into it the limiting language in the first clause of § 40-9-1. Thus, we conclude that § 40-9-1(12) generally exempts the enumerated events from all taxation.
As an exception to this general exemption, § 40-9-1(12) provides that "[n]othing contained in this subdivision shall be construed to prohibit any municipality, county or state from imposing any license tax upon or for the privilege of engaging in the business of ... conducting or operating shows, displays or exhibits ...." That exception clearly grants governmental authorities the right to impose a "license tax" on entities conducting shows or exhibits despite the general prohibition against "taxation of any character." However, as an exception to the exception, no "license tax" can be imposed for conducting "shows, displays or exhibits of agricultural implements, farm products, [or] livestock...." at the events described in § 40-9-1(12). In short, 40-9-1(12) creates a limited exemption for the events enumerated therein, which exemption allows the state to tax only those receipts from nonagricultural shows and exhibits conducted by the taxpayer at the event.
The Department argues that even if § 40-9-1(12) does provide some exemption, that exemption has been impliedly repealed. The Department points out that § 40-9-1(12) was first enacted in 1935, see Ala. Acts 1935, Act No. 1935-194, at a time when Alabama was contemplating, but had not yet adopted, a statewide sales tax. The next year, the legislature passed a state "license tax," which imposed *829 a tax on the gross receipts of "places of amusement." Ala. Acts 1936 (Extraordinary Session, 1936-1937), Act No. 1936-1, § 3. The following year, the legislature repealed that act and replaced it with a new act using identical language, but imposing a higher tax. Ala. Acts 1937 (Extraordinary Session 1936-1937), Act No. 1937-126, § 2(c). Both the 1936 act and the 1937 act provided "that all laws or parts of law in conflict with the provisions of this Act ... be and are hereby expressly repealed." The Department argues that § 40-9-1(12) has been impliedly repealed because it is fatally inconsistent with the amusement "license tax" enacted in 1936 and 1937 and now codified at § 40-23-2(2), Ala.Code 1975.
"`"`"[R]epeal by implication is not favored."'"' Shiv-Ram, Inc. v. McCaleb, 892 So.2d 299, 312 (Ala.2003) (quoting Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n, 294 Ala. 173, 177, 314 So.2d 51, 55 (1975), quoting in turn State v. Bay Towing & Dredging Co., 265 Ala. 282, 289, 90 So.2d 743, 749 (1956)). `A later statute may repeal an earlier statute by implication only under certain circumstances, such as when the two statutes, taken together, are so repugnant to each other that they become irreconcilable.' Hurley v. Marshall County Comm'n, 614 So.2d 427, 430 (Ala.1993). `"`Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes.'"' Shiv-Ram, 892 So.2d at 312 (quoting Fletcher, 294 Ala. at 177, 314 So.2d at 55 (emphasis added))."
Willis v. Kincaid, 983 So.2d 1100, 1106 (Ala.2007).
"[In] Connor v. State in re Boutwell, 275 Ala. 230, 233-34, 153 So.2d 787, 791 (1963), quoting from 50 Am.Jur. Statutes § 561[, the court stated] as follows:
"`"It has been broadly stated that the rule as to repeals implied from repugnancy of provisions applies as well between a general and a special or local act as between two general ones. As a general rule, however, general or broad statutory provisions do not control, modify, limit, affect, or interfere with special or specific provisions.",
"This Court in Boutwell also quoted from 50 Am.Jur. Statutes § 564 as follows:
"`"It is, however, equally true that the policy against implied repeals has peculiar and special force when the conflicting provisions, which are thought to work a repeal, are contained in a special or specific act and a later general or broad act. In such case, there is a presumption that the general or broad law was not designed to repeal the special or specific act, but that the special or specific act was intended to remain in force as an exception to the general or broad act, and there is a tendency to hold that where there are two acts, one special or specific act which certainly includes the matter in question, and the other a general act which standing alone would include the same matter so that the provisions of the two conflict, the special or specific act must be given the effect of establishing an exception to the general or broad act."'
"275 Ala. at 234, 153 So.2d at 791 (emphasis added)."
Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 961 (Ala.2004). "Statutes should be construed together so as to harmonize the provisions as far as practical." Ex parte Jones Mfg. Co., 589 So.2d 208, 211 (Ala.1991). "In the event of a conflict between two statutes, a specific statute relating to a specific subject is regarded as an exception to, and will prevail *830 over, a general statute relating to a broad subject." Id.
Section 40-23-2(2) is a general statute imposing a license tax, sometimes referred to as the amusement tax or the amusement sales tax, on the gross receipts of all "places of amusement."[5] The statute itself, although listing a variety of establishments and amusement and entertainment activities, does not mention those specific events listed in § 40-9-1(12).[6] Therefore, it is presumed that the legislature did not intend § 40-23-2(2) to repeal § 40-9-1(12) and that the legislature instead intended that § 40-9-1(12) would remain in effect as an exception to § 40-23-2(2). Construing the general statute in harmony with the specific statute, § 40-23-2(2) generally imposes a license tax on the gross receipts of a business conducting a place of amusement, while § 40-9-1(12) stands as a limited exception to that general rule prohibiting taxation of the receipts from those events specifically enumerated therein. Thus, we conclude that § 40-9-1(12) has not been impliedly repealed by the enactment of § 40-23-2(2).
The Department also argues that the taxpayer and all other similarly situated taxpayers have consistently paid the amusement sales tax set out in § 40-23-2(2) for the last 60 years. We note that that statement is not supported by any evidence in the record. Hail v. Regency Terrace Owners Ass'n, 782 So.2d 1271, 1277 (Ala.1999) ("`[T]his Court is limited to a review of the record alone, and the record cannot be changed, altered, or varied on appeal by statements in briefs of counsel.'" (quoting Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990))). The record does, however, indicate that the taxpayer has consistently paid the amusement sales tax since the 1980s, but the Department fails to make any argument as to the legal effect of that consistent payment. It is not the function or duty of this court to create legal arguments for an appellant. Gonzalez v. Blue Cross/Blue Shield of Alabama, 760 So.2d 878 (Ala.Civ.App.2000).
At trial, one of the Department's examiners testified that at least since before 2000 the Department had taken the position that it was entitled to collect the amusement sales tax from the receipts for the sale of the admission tickets. She further testified that she was not aware of any exemption that applied. The examiner reviewed Rule 810-6-3-.07.05, Ala. Admin. Code (Dep't of Revenue), which lists a variety of entities exempted from the amusement sales tax by other specific legislation, and testified that the taxpayer was not on that list. The Department also cites Rule 810-6-1-.125, Ala. Admin. Code (Dep't of Revenue), which provides, in pertinent part, that "fairs" are included within the meaning of "places of amusement." Rule 810-6-1-.125(3)(e)3., Ala. Admin. Code.
Based on the examiner's testimony and Rule 810-6-1-.125, the Department *831 argues that this court should defer to its consistent interpretation of § 40-9-1(12). See Hulcher v. Taunton, 388 So.2d 1203, 1206 (Ala.1980) ("Interpretations of an act by the administrative agency charged with its enforcement, though not conclusive, are to be given great weight by the reviewing court."). The Department acknowledges that Rule 810-6-1-.125 was amended, effective December 2006, to include "fairs," which we note is at least one year after the relevant tax periods at issue in this case. The Department argues that that regulation should be given retroactive effect. However, it makes that argument without citation to any legal authority, and, thus, we need not consider that argument. See Rule 28(a)(10), Ala. R.App. P. Even if we could consider that argument, we find that the regulation, as well as the interpretation of the statute to which the examiner attested, have no persuasive force because they contradict § 40-9-1(12) to the extent that § 40-9-1(12) generally exempts state and county fairs from "taxation of any character." See Ex parte Jones Mfg. Co., 589 So.2d at 210 ("An administrative agency cannot usurp legislative powers or contravene a statute. ... A regulation cannot subvert or enlarge upon statutory policy.").
The Department also argues that because the legislature has enacted specific legislation to exempt certain entities from taxation, it must have determined that § 40-9-1(12) did not create an exemption. It is true that § 40-23-5(d), Ala.Code 1975, grants a specific exemption against all sales and use taxes to the South Alabama State Fair Association Southeastern Livestock Exposition of the State of Alabama; that § 40-9-15, Ala.Code 1975, exempts from all taxation the Alabama State Fair and Exhibit Association; and that Ala. Acts 1994, Act No. 94-119, exempts the Greater Gulf State Fair from county and municipality sales and use taxes. However, those exemptions are much broader than the exemption found in § 40-9-1(12). As explained above, the exemption in § 40-9-1(12) applies only to enumerated events and not generally to the entity that conducts those events. Furthermore, the exemption is subject to an exception that allows for taxation of the receipts for sales of tickets to nonagricultural shows and exhibits. The exemptions upon which the Department rely apply to the entities themselves, meaning the entities are subject to no taxation or, in the case of the Greater Gulf State Fair, to no municipal or county sales and use taxation, even when making sales outside of the events enumerated in § 40-9-1(12) or even when accruing income from sources other than those events. Furthermore, those exemptions are not subject to the exception set out in the last clause of the last sentence of § 40-9-1(12). By giving those entities broader exemptions than the one contained in § 40-9-1(12), the legislature did not in any way acknowledge that § 40-9-1(12) does not already create a limited exemption.
In the end, the Department has failed to present this court with any reasonable construction of § 40-9-1(12). Based on the arguments of the Department, § 40-9-1(12) would have no field of operation; however, "it is presumed that the Legislature did not do a vain and useless thing." Alidor v. Mobile County Comm'n, 291 Ala. 552, 558, 284 So.2d 257, 261 (1973). We believe the construction we have placed on § 40-9-1(12) is a reasonable one that gives effect to the intent of the legislature and harmonizes § 40-9-1(12) with the other statutes and enactments cited by the Department.

Application of § 40-9-1(12)
In this case, the undisputed facts show that the Festival is a "state fair" within the meaning of § 40-9-1(12). Although *832 the Festival may not be characterized as a "fair" within the common-law meaning of that term set out in Black's Law Dictionary,[7] it is certainly a "fair" within the common understanding of that word as "a competitive exhibition usu. with accompanying entertainment and amusements." Merriam-Webster's Collegiate Dictionary 449 (11th ed.2003). See IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992) ("Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning ...."). Because the Festival is operated by the taxpayer, who is a member of the Alabama State Fair Association, and because the Alabama Department of Agriculture cosponsors the Festival with state funds, it can only be characterized as a "state" fair.
Because the Festival is a state fair, any receipts generated from the sale of the admission tickets generally would not be subject to "taxation of any character" under § 40-9-1(12). However, as an exception to that rule, the last sentence of § 40-9-1(12) authorizes the imposition of a "license tax" for the privilege of conducting nonagricultural exhibits, displays, and shows. Arguably, the beauty pageants are separate shows that precede the Festival, but even if they were considered part of the Festival, any receipts generated from the sale of tickets to those pageants would be subject to a "license tax." Likewise, the musical concerts are shows that do not involve agricultural displays  or at least the taxpayer did not prove that those concerts involved agricultural displays  and they would also be subject to a "license tax."
By its own terms, § 40-23-2(2) is a "license tax." See § 40-23-2 ("There is levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities ...."). That license tax is generally "four percent of the gross receipts of [the] business."[8] § 40-23-2(2), Ala.Code 1975. However, because of the limited exemption created by § 40-9-1(12), the Department is precluded from collecting sales taxes on the receipts from the sale of all the admission tickets; in regard to the admission tickets, it may only tax that portion of the gross receipts relating to the sale of admission tickets granting access to the concerts and the beauty pageants.
The taxpayer finally argues that if its receipts from the sale of admission *833 tickets are subject to taxation, then the tax should only be applied prospectively. In at least two cases our supreme court has held that when the meaning of a tax law was unclear at the time of the taxable event due to conflicting judicial opinions, legislative enactments, and/or administrative regulations, it would apply its decision clarifying the law prospectively. See Ex parte Sizemore, 605 So.2d 1221 (Ala.1992); and City of Birmingham v. AmSouth Bank, N.A., 591 So.2d 473 (Ala.1991).[9] The taxpayer argues that in refusing to collect and remit the amusement sales tax, it reasonably relied on interpretations of § 40-9-1(12) contained in the trial court's judgment in the 2004 action and two attorney general opinions. As we have already pointed out, the trial court's judgment in the 2004 action is not in the record before us, and we cannot take judicial notice of its contents; hence, we cannot determine from the record whether that judgment was a binding legal opinion regarding the effect of § 40-9-1(12), a fact which the Department disputes, and, consequently, whether the taxpayer could have reasonably relied on that judgment.
In Attorney General Opinion No. 1999-180, in response to a request from the probate judge of Walker County regarding how a probate judge could determine whether a fair is exempt from licensing and taxation under § 40-9-1(12), the attorney general's office stated that "the admission fees charged by a county fair are not subject to `taxation of any character,' including admissions tax such as that charged under section 40-23-2(2) ...." Op. Att'y Gen. No. 1999-180 (April 23, 1999). That opinion ultimately concluded that "[t]he probate judge can determine whether a fair is exempt ... by making a factual determination regarding the entity conducting the fair or `show.'" Id. Four years later, the attorney general's office reiterated that, "[i]n accordance with section 40-9-1(12) of the Code, state and county fairs and the shows of agriculture associations are exempt from taxation," in opining that the probate judge of DeKalb County could determine whether the exemption applied to the DeKalb County Agricultural Fair as a "county fair." Op. Atty. Gen. No. 2003-100 (March 11, 2003).[10]
The record contains no evidence indicating that the taxpayer relied on those two attorney general opinions. The taxpayer's president testified that the taxpayer stopped collecting and remitting taxes after learning at a meeting with other fair officials that the legislature had passed an exemption relieving fairs of tax liability. Even if it can be inferred that the information the taxpayer received arose indirectly from the attorney general opinions, its reliance on those opinions would not have been reasonable. Unlike court opinions,
"written opinions of the Attorney General are not controlling. They are merely advisory and, under the statute, such opinions operate only to protect the officer *834 to whom it is directed from liability because of any official act performed by such officer as directed or advised in such opinions. [§ 36-15-19, Ala.Code 1975.]"
Broadfoot v. State, 28 Ala.App. 260, 261, 182 So. 411, 412 (1938); see also Hunt v. Tucker, 875 F.Supp. 1487, 1516 (N.D.Ala. 1995).
Unlike in Ex parte Sizemore and City of Birmingham v. AmSouth Bank, N.A., supra, the taxpayer in this case was not confused by conflicting, binding legal interpretations of the language of a tax law. Based on that distinction, we decline to follow those cases, and we apply our decision retroactively.
In this case, the record is not clear as to what part of the receipts related solely to the sale of admission tickets to the concerts and the beauty pageants. In the case of the beauty pageants, some tickets were sold separately to those events, but some tickets also were sold as part of the "patron's package." As for the concerts, the record suggests that the price for access to the concerts is factored into the overall price of the admission tickets. Therefore, we cannot determine from the record the appropriate amount of taxes the taxpayer was obligated to collect and remit. We, therefore, remand the case to the trial court for it to conduct further proceedings on that point.

Conclusion
In summary, we find that § 40-9-1(12) creates a limited exemption for the events enumerated therein, which exemption allows the state to tax only those receipts from non-agricultural shows and exhibits conducted by the taxpayer at the event. Our holding applies retroactively to include the tax years at issue in this case. As applied, that exemption precluded the taxation of the gross receipts from the sale of all the admission tickets but allowed the taxation of that portion of the sales applicable to the beauty pageants and the concerts. The trial court therefore erred in granting the taxpayer a total exemption and in ordering a complete refund. We, therefore, reverse the trial court's judgment and remand the cause to the trial court for a determination of the tax due from the taxpayer for the sale of tickets to the beauty pageants and the concerts and for a determination of the amount of the refund, if any, due the taxpayer.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in part and dissents in part, with writing.
BRYAN, J., dissents, with writing.
THOMPSON, Presiding Judge, concurring in part and dissenting in part.
I agree with the main opinion except to the extent that it holds that the tax must be applied retroactively. I agree with the taxpayer that confusion existed regarding its liability for the taxes in question. Therefore, I would prospectively apply the holding of the main opinion to this taxpayer. See Wal-Mart Stores, Inc. v. City of Mobile, 696 So.2d 290 (Ala.1996) (applying a holding in a tax case prospectively); and Ex parte Sizemore, 605 So.2d 1221, 1227 (Ala.1992) ("Because of the confusion of the law in this area, we [clarify the statute] without penalizing the taxpayer in this instance. Therefore, the interpretation of the law in this case is prospective only.").
BRYAN, Judge, dissenting.
Because I would affirm the trial court's judgment, I must respectfully dissent.
I agree with the main opinion's conclusion that the festival put on by The National Peanut Festival Association, Inc. *835 ("the Association"), is a state fair within the meaning of § 40-9-1(12), Ala.Code 1975. However, unlike the main opinion, I would hold that, because the festival is a state fair, § 40-9-1(12) exempts from "taxation of any character" all the receipts generated by the sale of admission tickets to events or shows associated with the festival whether those tickets are for admission to the "Little Miss" pageant, the "Big Miss" pageant, the agricultural exhibits, the musical concerts, the parade, or the midway. In my opinion, the last sentence in § 40-9-1(12), which states that "[n]othing contained in this subdivision shall be construed to prohibit any municipality, county or state from imposing any license tax upon or for the privilege of engaging in the business of ... conducting or operating devices or games of skill or amusements or other games or devices, or conducting or operating shows, displays or exhibits other than shows, displays or exhibits of agricultural implements, farm products, livestock and athletic prowess" (emphasis added), does not subject the receipts generated by the sale of admission tickets to events or shows associated with the festival to taxation because the Association is not in the business of doing those things; rather, the Association is a nonprofit entity that puts on the festival merely to effect the purpose for which it is organized, i.e., promoting interest in peanuts and peanut farming. See 10-2A-21(17), Ala.Code 1975. The final sentence of § 40-9-1(12) would, however, allow a municipality, a county, or the state to impose on the separate carnival company that operates the midway a "license tax upon or for the privilege of engaging in the business of ... conducting or operating devices or games of skill or amusements or other games or devices, or conducting or operating shows, displays or exhibits other than shows, displays or exhibits of agricultural implements, farm products, livestock and athletic prowess," because the separate carnival company is in the business of operating the midway.
Although the Association has not argued that we should affirm the trial court's judgment on the particular ground that I have articulated above, we can affirm a trial court's judgment on any legally valid ground. See Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988).
NOTES
[1] For the purposes of this appeal, the Department has stipulated that it considers the sale of patron's packages to consist merely of the sale of admission tickets.
[2] The taxpayer receives a percentage of the gross receipts of the midway carnival, but those receipts are not at issue in this case.
[3] In the pleadings, the parties were originally in dispute over other taxes that had been assessed by the Department against the taxpayer; however, all the disputes were resolved by stipulation except the refund claim regarding the sales taxes and the Department's counterclaim seeking additional sales taxes on the receipts from the sale of the admission tickets.
[4] Because it found that the taxpayer was entitled to a refund, the trial court impliedly denied the counterclaim filed by the Department; the judgment is therefore final and will support an appeal. See Housing Auth. of Chickasaw v. CBE, Inc., 656 So.2d 1219, 1220-21 (Ala.Civ.App.1995). The Department does not raise any issue regarding the denial of its counterclaim.
[5] Section 40-23-2 provides, in pertinent part:

"There is levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities ... as follows:
"....
"(2) Upon every person, firm, or corporation engaged or continuing within this state in the business of conducting or operating places of amusement or entertainment, ... or any other place at which any exhibition, display, amusement, or entertainment is offered to the public or place or places where an admission fee is charged, ... an amount equal to four percent of the gross receipts of any such business."
[6] The Department has promulgated a regulation further defining the term "places of amusement," Rule 810-6-1-.125, Ala. Admin. Code, which is discussed in more detail infra.
[7] "A privileged market for the buying and selling of goods.  A fair was an incorporeal hereditament granted to a town by royal patent or franchise or established by prescription. The franchise to hold a fair conferred important privileges, and a fair, as a legally recognized institution, possessed distinctive legal characteristics, most of which are now obsolete." Black's Law Dictionary 633 (8th ed.2004).
[8] We respectfully disagree with the position taken by the dissent that the taxpayer is not "engag[ed] in the business of ... conducting or operating shows, displays or exhibits other than shows, displays or exhibits of agricultural implements, farm products, livestock and athletic prowess" so as to be subject to limited taxation as set out in the last sentence of § 40-9-1(12). 11 So.3d at 835 (Bryan, J., dissenting). Although the purpose of the Festival is to promote interest in peanuts and peanut farming, it is undisputed that, in pursuit of that purpose, the taxpayer conducts parades, concerts, and beauty pageants for which it collects admission fees. The taxpayer is in fact engaged in a commercial undertaking that generates revenue to serve its agricultural purpose. By wording § 40-9-1(12) as it did, the legislature obviously recognized that a state agricultural fair can also be in the business of conducting nonagricultural displays for which taxes may be collected; otherwise, the last clause of the last sentence of the statute would be unnecessary.
[9] Our supreme court has also applied changes in the caselaw interpreting a tax law prospectively. See Wal-Mart Stores, Inc. v. City of Mobile, 696 So.2d 290 (Ala. 1996); and State v. Morrison Cafeterias Consol., Inc. of Delaware, 487 So.2d 898 (Ala. 1985). However, because we are not changing any prior caselaw interpreting § 40-9-1(12), those cases are not on point.
[10] In State Department of Revenue v. Arnold, 909 So.2d 192 (Ala.2005), issued on March 18, 2005, the supreme court held that those two attorney general opinions were erroneous because a probate judge has no subject-matter jurisdiction to decide the applicability of the exemption set out in § 40-9-1(12). However, the court did not address the meaning of § 40-9-1(12) or discuss the validity of the attorney general's interpretation of that statute.