MOORE, Judge.
This is the second time these parties have been before this court regarding the proper amount of amusement taxes due from The National Peanut Festival Association, Inc. (“the taxpayer”), for the tax years 2004 and 2005. See Alabama Dep’t of Revenue v. National Peanut Festival Ass’n, Inc., 11 So.3d 821 (Ala.Civ.App.2008) (“Peanut Festival”). In the first appeal, this court reversed a judgment entered by the Houston Circuit Court (“the trial court”) exempting the taxpayer from any taxation on receipts generated from the National Peanut Festival (“the Festival”) for the tax years 2004 and 2005. This court determined that § 40-9-1(12), Ala.Code 1975, grants the taxpayer a general exemption from taxation on the revenue generated from the Festival but that, as an “exception” to that exemption, 11 So.3d at 828, § 40-9-1(12) allows the Alabama Department of Revenue (“the Department”) to assess an amusement tax of 4% against the gross receipts generated by the taxpayer from conducting or operating “nonagricultural shows and exhibits” at the Festival. 11 So.3d at 828. This court remanded the case to the trial court “for a determination of the tax due from the taxpayer for the sale of tickets to the [‘Miss Peanut’ and ‘Little Miss Peanut’ pageants] and the concerts [conducted at the Festival] and for a determination of the amount of the refund, if any, due the taxpayer.” 11 So.3d at 834.
On remand, the trial court took additional evidence and entered a judgment finding that the taxpayer owed $7,449.77 in amusement taxes for the years 2004 and 2005. The trial court found that the Department had assessed $65,494.29 in amusement taxes against the taxpayer for the relevant tax years; thus, the trial court ordered the Department to refund $58,044.52 to the taxpayer. The Department filed a timely appeal from that judgment. This court conducted oral argument on March 23, 2010.
On appeal, the Department initially argues that the trial court erred in taxing only the receipts generated from the Festival pageants and concerts and in not taxing receipts generated from other activities and events held at the Festival. We disagree.
“ ‘The issues decided by an appellate court become the law of the case on remand to the trial court, and the trial court is not free to reconsider those issues.’ Ex parte S.T.S., 806 So.2d 336, 341 (Ala.2001) (citing Murphree v. Murphree, 600 So.2d 301 (Ala.Civ.App.1992)). Moreover, on remand, ‘ “the trial court’s duty is to comply with the appellate mandate ‘according to its true intent and meaning, as determined by the directions given by the reviewing court.’ ” ’ Ex parte Jones, 774 So.2d 607, 608 (Ala.Civ.App.2000) (quoting Walker v. Carolina Mills Lumber Co., 441 So.2d 980, 982 (Ala.Civ.App.1983), quoting in turn Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983)).”
Brown v. Brown, 20 So.3d 139, 141 (Ala.Civ.App.2009).
*356 In Peanut Festival, this court decided that § 40-9-1(12) prohibits the state from taxing any revenues generated from a state fair except revenue “from nonagricul-tural shows and exhibits conducted by the taxpayer at the event.” 11 So.3d at 828. In using the term “nonagricultural shows and exhibits,” this court was referring to “shows, displays or exhibits other than shows, displays or exhibits of agricultural implements, farm products, livestock and athletic prowess,” as set out in the last sentence of § 40-9-1(12). 11 So.3d at 827-28. In applying our construction of § 40-9-1(12) to the facts as established in the record, this court held that the Festival is a “state fair,” 11 So.3d at 831-32, and that the pageants and musical concerts held in conjunction with the Festival constituted “nonagricultural shows and exhibits.” 11 So.3d at 832. This court then stated:
“In this case, the record is not clear as to what part of the receipts related solely to the sale of admission tickets to the concerts and the ... pageants. In the case of the ... pageants, some tickets were sold separately to those events, but some tickets also were sold as part of the ‘patron’s package.’ As for the concerts, the record suggests that the price for access to the concerts is factored into the overall price of the admission tickets. Therefore, we cannot determine from the record the appropriate amount of taxes the taxpayer was obligated to collect and remit. We, therefore, remand the case to the trial court for it to conduct further proceedings on that point.”
11 So.3d at 834. Thus, this court instructed the trial court to determine on remand the tax due on only the receipts generated from the sale of admission tickets to the pageants and the concerts. This court did not order the trial court to ascertain if any other events conducted at the Festival could be subject to taxation under § 40-9-1(12).
In rendering the decision in Peanut Festival, this court was aware of all the activities and events conducted at the Festival. The record in Peanut Festival contained exhibits identifying all “special events” held at the Festival during 2004 and 2005. In addition, in her testimony, Pat Holland, the president of the taxpayer in 2007, described some of those events, including the midway, livestock exhibits, agricultural-equipment exhibits, a “Farmer for a Day” exhibit for children, recipe contests, and a “Doo-Da” parade for children. However, this court determined that only the pageants and the concerts could be considered “nonagricultural shows and exhibits” subject to taxation.[1] The Department did not apply for rehearing or otherwise contest our determination; thus, that conclusion became the law of the case, and, on remand, the trial court was not free to reconsider that issue and decide for itself whether any other activities held at the Festival fell outside the scope of the limited exemption created by § 40-9-1(12).
“[Wjhatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). On remand, the Department did not attempt to introduce evidence as to receipts generated from other activities and events conducted at the Festival in 2004 and 2005 of which *357 this court and the trial court were unaware. Instead, the Department attempted to have the trial court reclassify as nonexempt only the revenue generated from events and activities that this court had already determined fell within the § 40-9-1(12) exemption. The trial court correctly rejected the Department’s efforts in that regard and, therefore, did not commit any error in calculating the tax and refund due by referring to the receipts generated from only the pageants and the concerts.[2]
The Department next contends that the taxpayer failed to meet its burden of proving that portion of the gate admission receipts that was exempt from the amusement tax.[3] In the initial appeal, this court did not decide which party bore the burden of proof on that point. The Department’s argument assumes that the taxpayer bore that burden because the taxpayer generally bears the burden of proving the incorrectness of a tax assessment on appeal. See Ala.Code 1975, § 40-2A-7(b)(5)(c). However, the taxpayer has already proven the incorrectness of the tax assessment. The Department assessed an amusement tax on the entire gross receipts generated from the sale of the gate admission tickets, and, in Peanut Festival, this court decided that the taxpayer had proven, by showing that some portion of those receipts was exempt from tax under § 40-9-1(12), that the Department had incorrectly assessed the amusement tax. The essential question on remand was: What portion of the gate admission receipts was not taxable due to the § 40-9-1(12) exemption?
Generally speaking, Alabama law places the burden on the taxpayer to clearly establish its right to an exemption. See Flav-O-Rich, Inc. v. City of Birmingham, 476 So.2d 46, 48 (Ala.1985). When the taxpayer generates income, some of which is taxable and some of which is not taxable, the burden rests on the taxpayer to prove that portion which is not taxable. See, e.g., John Gary Ellis, Southern Breeze, LLC v. State Dep’t of Revenue, Administrative Law Division, Dkt. No. S. 07-884 (entered on August 25, 2008).[4] That burden of proof coincides with the general duty of a taxpayer that is subject to an amusement tax to maintain suitable records “as may be necessary to determine the amount of tax for which he is liable.” § 40-23-9, Ala.Code 1975. Based on that legal authority, we conclude that the taxpayer bore the burden of proving on remand the portion of the gate admission receipts that were exempt from taxation pursuant to § 40-9-1(12).
On remand, the taxpayer proved that the concerts occurred on only 4 of the 9 or 10 days of the Festival in 2004 and 2005, respectively. On those dates, the taxpayer charged patrons the same gate admission fee as on dates the concerts were not held, $7. Those patrons wishing to view the concerts from within a fenced-in area in front of the concert stage on stadium-style *358 benches set up for that purpose could purchase “reserved seating” for an additional $10. In 2004, the taxpayer generated $4,380 from the sale of “reserved seating” tickets, and, in 2005, it generated $13,230 from the sale of “reserved seating” tickets. On the other hand, those persons wishing to view the concerts from a hill outside that fenced-in area, where the view was more obstructed, were not charged any additional fee. The taxpayer did not count the number of people who viewed the concerts from outside the fence, but its witness testified that “plenty of people” attended the concerts that way.
In its judgment, the trial court determined that the amusement tax applied to the proceeds from the sale of “reserved seating.”[5] However, the trial court concluded that “patrons [who] do not elect to purchase [reserved-seating tickets] are no more than mere incidental beneficiaries of the concerts.” The trial court noted that the Department had attempted to provide the court with a method for allocating the taxable and nontaxable portion of the gate admission receipts, but the trial court determined that that analysis “would have [the trial court] speculate as to what portion of the general admission ticket price is attributable to this incidental benefit.” The trial court therefore did not apply any amusement tax to the gate admission tickets sold on the concert dates.
In its judgment, the trial court effectively ruled that the taxpayer owed no further amusement tax because the Department had failed to prove the taxable portion of the gate admission receipts. However, as we have decided, the burden was not on the Department to prove the taxable portion of the gate admission receipts; rather, the burden of proof rested on the taxpayer to prove the nontaxable portion of those receipts.[6] The taxpayer did not attempt to prove that amount, leaving the trial court to speculate as to that issue. The taxpayer should not be allowed to profit from the failure to discharge its burden by avoiding any taxation on its gate admission receipts, as the trial court held. Rather, because the taxpayer did not prove that any portion of the receipts generated from the gate admission ticket sales on the date of the concerts fell within the exemption, all of those receipts should be taxed.[7] See Ex parte White, 477 So.2d 422 (Ala.1985) (manufacturer who did not comply with reasonable Department of Revenue administrative rule requiring separate metering of taxable and exempt uses of gas and electricity was required to pay tax on combined taxable and exempt uses). Accordingly, we re *359 verse the judgment of the trial court and remand the case to the trial court to determine from the evidence in the record the gross amount of receipts generated from the sale of gate admission tickets on the dates of the concerts, to determine the amusement tax due on those receipts, and to determine the amount of the refund, if any, due the taxpayer.[8]
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN and THOMAS, JJ, concur.
THOMPSON, P.J., and BRYAN, J„ concur in part and dissent in part, with writings.

. The receipts from the operation of the midway were not in issue in Peanut Festival, and, therefore, this court did not have any occasion to address the propriety of the taxation of those receipts. See 11 So.3d at 825 n. 2.

.Because we decide that the law-of-the-case doctrine prevented the trial court from determining whether activities and events other than the pageants and the concerts were "nonagricultural shows and exhibits,” we do not address the Department's argument that the trial court used the wrong criteria in differentiating between agricultural and non-agricultural shows.

. The parties have agreed as to the tax due for the sale of tickets to the pageants, so that issue is not before us on this appeal.

. Although rulings of administrative law judges in tax cases are not binding on this court, they are persuasive authority upon which this court may rely. See Marks-Fitzgerald Furniture Co. v. State Dep’t of Revenue, 678 So.2d 121 (Ala.Civ.App.1995).

. Due to a misunderstanding on the nature of those receipts, the Department did not originally assess a tax on the receipts generated from the sale of "reserved seating” tickets for the concerts. Because no tax had been assessed on the sale of those tickets, the trial court erred in ruling on the taxability of those receipts, which was not in issue. However, the taxpayer did not file a cross-appeal regarding the trial court’s ruling on that issue, so we do not address that issue further.

. Based on our holding, we pretermit any discussion of the Department's argument that the trial court erred in excluding evidence it attempted to introduce in order to prove the appropriate allocation between the taxable and nontaxable portion of the gate admission receipts. Any error the trial court may have committed in that regard has not resulted in any prejudice to the Department. See Rule 45, Ala. R.App. P.

.The receipts generated from the sale of gate admission tickets on the dates on which no concerts were held could not possibly be categorized as taxable income because the taxpayer did not exhibit any nonagricultural shows or displays on those dates. Hence, the trial court did not err in concluding that the taxpayer owed no taxes on the receipts from the sale of gate admission tickets on those dates.

. The taxpayer is not entitled to any credit for the payment of taxes on reserved-seating tickets. See note 5, supra.